## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-DR-00379-SCT

*JOSEPH PATRICK BROWN*

*a/k/a "PEANUT"*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/94 |
| TRIAL JUDGE: | HON. RICHARD T. WATSON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES W. CRAIG |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| | LESLIE S. LEE |
| DISTRICT ATTORNEY: | ALONZO STURGEON |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION RELIEF |

DISPOSITION: APPLICATION FOR POST-CONVICTION RELIEF GRANTED IN PART AND DENIED IN PART - 11/4/1999

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

11/29/99


### EN BANC.

### WALLER, JUSTICE, FOR THE COURT:


#### STATEMENT OF THE CASE

¶1. Joseph Patrick ("Peanut") Brown was charged with shooting a convenience store clerk to death on August 8, 1992, during the commission of an armed robbery. He was indicted for capital murder on June 21, 1993. His motion for change of venue was granted and an order entered transferring venue from Adams

County to Amite County. The order was later amended to restrict the transfer for the limited purpose of jury selection. A trial commenced on March 8, 1994. Brown was represented by two attorneys, Donald Ogden and Pamela Ferrington.

## STATEMENT OF FACTS

¶2. In the early hours of August 8, 1992, Brown and his girlfriend, Rachel Walker, were driving around Natchez in search of drugs. Brown drove to the Charter Food Store and went inside. Walker stayed in the car and observed Brown approach the counter. Walker saw the store clerk, Martha Day, grab her chest and fall. Brown returned to the car with a gun and a cash register. Brown allegedly told Walker, "If you love me, you won't say anything." Day's body was later discovered with four bullet wounds. She had been shot once in the head, once through the heart, and twice in the back. The convenience store had marked a two-dollar bill and left it in the cash register. This bill was included in the currency that Brown gave to Walker for a drug purchase later that morning. Walker also pawned a .22 caliber pistol for $20 that same day which was used for yet another drug purchase. Police recovered both the two-dollar bill and the .22 pistol.

¶3. Walker and Brown were arrested on August 11, 1992. While in jail, Brown sent notes and letters to Walker which contained incriminating statements such as, "But we must be strong if we are going to beat this stuff . . . just tell them that you don't know anything." A fellow inmate, Larry Bernard, said that Brown confided that he (Brown) had shot Martha Day and taken the cash register. The State's ballistics expert linked the bullets found in Day's body with the pistol pawned by Walker. A jury found Brown guilty as charged, and he was sentenced to death by lethal injection. Brown appealed the conviction and sentence which were affirmed by this Court in ***Brown v. State***, 682 So. 2d 340 (Miss. 1996). He was represented on appeal by his trial counsel, Pamela Ferrington and Donald Ogden.

¶4. Brown's application for post-conviction relief was filed by James Craig on March 17, 1998. This Court later remanded the matter to the trial court for the limited purpose of determining the compensation of counsel. The application also requests investigative funding, discovery and an evidentiary hearing.

## DISCUSSION

### *Whether the Circuit Court was Without Jurisdiction*

¶5. The trial judge granted a change of venue to Amite County but later amended the order to transfer venue for the limited purpose of selecting jurors. The amended order provided that the trial would be held in Adams County. Brown's first claim is that the Circuit Court of Adams County lacked jurisdiction to enter the order of conviction. Brown asserts that he was entitled to change of venue but no such change was ever effected since the trial was held in Adams County.

¶6. Brown argues, alternatively, that either the jurors from Amite County were illegally summoned by the Circuit Court of Adams County or that the Circuit Court of Amite County illegally tried him in Adams County. Brown concludes that, either way, he was not tried by a court of competent jurisdiction such that he was denied due process under the Fourteenth Amendment to the U.S. Constitution. The State responds that Brown is trying to present an issue of venue under the guise of a jurisdictional question. A challenge to venue was capable of being raised on direct appeal and is now procedurally barred. Miss. Code Ann. § 99-39-21(1).

¶7. Notwithstanding the bar, the issue is without merit. Brown attempts to raise a venue claim under the

guise of a jurisdictional issue. Jurisdiction continues to lie in the county where the offense was committed. Miss. Code Ann. § 99-11-3 (1994 & Supp. 1999). This Court has previously upheld a transfer of venue made only for purposes of selecting a fair and impartial jury. *De La Beckwith v. State*, 707 So. 2d 547, 598 (Miss. 1997). In that case, the offense was alleged to have been committed in Hinds County but venue was transferred to Panola County for the purpose of selecting a jury only. Although the order transferring venue specified that the trial would be held in DeSoto County, the circuit court judge later determined that the trial should be held in Hinds County. The trial judge determined DeSoto County lacked adequate facilities and personnel to sequester a jury. In similar fashion, the circuit court here determined that the trial should be held in Adams County for reasons of practicality. Miss. Code Ann. § 99-15-35 (1994) allows a transfer of venue to a "convenient county" and such an act is within the considerable discretion of the trial judge. *Id.* This issue is without merit.

### *Whether Brown was Denied a Speedy Trial*

¶8. Brown's speedy trial claim could have been raised at trial and on direct appeal. The failure to do so waives the issue, and it is now procedurally barred from further consideration pursuant to Miss. Code Ann. § 99-39-21-(1). *Foster v. State*, 687 So. 2d 1124, 1129 (Miss. 1996); *Wiley v. State*, 517 So. 2d 1373, 1378 (Miss. 1987). Notwithstanding the procedural bar, the issue is without merit. Brown was arrested on August 11, 1992, and indicted for armed robbery on January 6, 1993. He was indicted for capital murder on June 21, 1993. Brown was arraigned on August 4, 1993, and the trial commenced on March 8, 1994. Miss. Code Ann. § 99-17-1 (1994) provides that a defendant shall be tried within 270 days following arraignment. Brown went to trial 216 days after his arraignment on the capital murder charge. There was no violation of Brown's statutory right to a speedy trial.

¶9. As for Brown's constitutional right to a speedy trial, the factors to be examined are: (1) the length of the delay; (2) the reason for the delay; (3) assertion of the right to a speedy trial; and, (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of these factors are dispositive but are to be considered together. *Gray v. State*, 728 So. 2d 36, 48 (Miss. 1998); *Wiley v. State*, 582 So. 2d 1008, 1011 (Miss. 1991). In the present case, 574 days passed between Brown's arrest and his trial. This delay is presumptively prejudicial. A significant portion of the delay, however, may be attributed to a series of defense motions filed between August 4, 1993, and February 28, 1994. Further, Brown never asserted his right to a speedy trial although he bears some responsibility for doing so. *Taylor v. State*, 672 So. 2d 1246, 1261 (Miss. 1996). This Court has held that a defendant's failure to assert his right to a speedy trial should be given "strong evidentiary weight" in weighing the *Barker* factors. *Atterberry v. State*, 667 So. 2d 622, 627 (Miss. 1995); *Fleming v. State*, 604 So. 2d 280, 301 (Miss. 1992).

¶10. The final consideration is the prejudice, if any, suffered by Brown as a result of the delay. Brown claims that if the armed robbery indictment were dismissed for failure to receive a speedy trial, then a conviction for capital murder would not be possible. Because proof of the armed robbery was an element of the capital murder charge, this assertion is unfounded. The right to a speedy trial is intended: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532 (footnote omitted). Brown does not claim that the pretrial incarceration was excessive or that he suffered anxiety or concern. Brown does not claim that his defense at trial suffered due to the passage of time. The record shows that defense counsel was appointed seven months before trial and that there is no assertion that any potential defense witness was unavailable due to the delay. This issue is without merit.

### *Ineffective Assistance of Counsel*

¶11. There is a "rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." ***Stringer v. State****, 627 So. 2d 326, 328-29 (Miss. 1993). There is no constitutional guarantee to errorless counsel. **Cabello v. State**, 524 So. 2d 313, 315 (Miss 1988). One who claims ineffective assistance of counsel must show not only the deficiency of counsel's performance but also that any such deficiency constituted prejudice to the defense. ***Strickland v. Washington*, 466 U.S. 668, 687 (1984)**; ***Williams v. State*, 722 So. 2d 447, 448 (Miss. 1998)**. This requires a showing that the error or omission was of such magnitude that it created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Mohr v. State****, 584 So. 2d 426, 430 (Miss. 1991). If the post-conviction application fails on either of the **Strickland** prongs, the proceedings end. ***Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996)**.

### *Whether Counsel was Ineffective for Failing to Offer Rebuttal on **Batson** Objection*

¶12. At trial, Brown's lawyers objected to the State's use of six peremptory challenges against black members of the venire panel. The State, in response, offered race-neutral reasons for the use of these strikes, and the trial court overruled the objections. Brown claims that trial counsels' performance was deficient in failing to offer rebuttal argument and that this omission resulted in the denial of his ***Batson*** objections. Brown does not articulate just what argument should have been offered in rebuttal but only speculates that there might have been some helpful information in the jurors' questionnaires. Brown also argues that the reasons offered by the State were the hearsay statements of police and that his attorneys should have challenged those statements.

¶13. This Court has previously held that there is no ineffective assistance claim even if counsel fails to raise the ***Batson*** issue at all if it appears from the record that the peremptory challenges were race-neutral. ***Conner v. State*, 684 So. 2d 608, 612-13 (Miss. 1996)**. In the present case, trial counsel did raise the objection, but the State successfully supported its use of the peremptory jury strikes. A review of the record shows that the State gave legitimate race-neutral reasons for each of the six challenges. As for the prosecution's reliance on information supplied by the police, this Court has previously held

> We decline to set any limits on the prosecutor's use of any legitimate informational source heretofore or hereafter available as to jurors. Furthermore, the prosecutor does not have to question a juror in open court about such information before using it as a racially neutral ground to make a peremptory strike, as long as the source of the information and the practice itself are not racially discriminatory.

***Lockett v. State****, 517 So. 2d 1346, 1352 (Miss. 1987). The State's reliance on police information was not improper, and trial counsel cannot be faulted for failing to further contest a race-neutral explanation for a peremptory strike. Further, Brown makes no showing that the outcome of his trial would have been different had his ***Batson*** objections been sustained. This issue is without merit.

### *Whether Counsel was Ineffective for Failure to Request a Continuance*

¶14. Defense counsel received the written statement of State's witness Larry Bernard on February 15, 1994, twenty days before trial. Brown argues that his attorneys were ineffective in failing to request a continuance. At trial, Bernard testified as to what Brown had purportedly said to him about the crime. Trial counsel chose not to cross-examine Bernard, and the State rested its case. Brown argues that his defense

was prejudiced in that his attorneys did not cross-examine this witness. Brown's attorneys had approximately twenty days in which to interview Bernard. There is no allegation that defense counsel failed to interview Bernard, only that counsel failed to cross-examine him. That decision must be attributed to trial strategy since Brown's trial attorneys were in the best position to gauge whether cross-examination of Bernard would be more harmful than helpful. Defense counsel did request a jury instruction on informant testimony which was granted by the trial court. Instruction D-11 provided

> The Court instructs the jury that the law looks with suspicion and distrust on the testimony of an alleged informant, and requires the jury to weigh same with great care and caution and suspicion. You should weigh the testimony from alleged informant, and passing on what weight, if any, you should give this testimony, you should weigh it with great care and caution, and look upon it with distrust and suspicion.

"This Court is not inclined to find either a deficient performance or prejudice in the failure of defense counsel to request a continuance following his opportunity to interview the witness." ***Cole v. State***, 666 So. 2d 767, 777 (Miss. 1995). Accordingly, the failure to raise the issue on direct appeal does not constitute an error in counsel's professional performance. This issue is without merit.

*Whether Counsel was Ineffective for Failure to Request a Lesser-Included Offense Instruction*

¶15. Brown's attorneys requested that the trial court instruct the jury on the lesser offense of accessory after the fact of capital murder. The trial judge declined to give the proffered instruction, and Brown now argues that it was error for counsel not to raise the issue on direct appeal. Brown also claims that it was error for counsel not to seek jury instructions on the lesser offenses of simple murder and armed robbery.

¶16. Proffered Jury Instruction D-29 read:

> The Court instructs you that if you do not believe from the evidence beyond a reasonable doubt that the Defendant, Joseph Patrick Brown, is guilty of capital murder, you may consider the Defendant's guilt in the lesser included charge of accessory after the fact to capital murder.

> You may believe from the evidence that Joseph Patrick Brown guilty of the crime of being an accessory after the fact for having concealed, aided and /or assisted Rachel Walker who had committed the capital murder of Martha Day, which is a felony with the knowledge that Rachel Walker had committed this felony and with the intent to enable Rachel Walker to avoid arrest, trial, conviction and punishment after the commission of the felony.

> If you find from the evidence in this case beyond a reasonable doubt that

> 1. Rachel Walker committed the capital murder of Ms. Martha Day, which is a felony under the laws of Mississippi, and

> 2. The Defendant, Joseph Patrick Brown, had knowledge that Rachel Walker had committed the capital murder of Ms. Martha Day, and

> 3. The Defendant, Joseph Patrick Brown, concealed, assisted and aided Rachel Walker by helping her avoid arrest and by assisting her in making her defense of said crime by advising her not to make statements, and

4. The Defendant, Joseph Patrick Brown, did these acts with the intent to enable Rachel Walker to avoid arrest, trial, conviction and punishment after Rachel Walker committed the capital murder of Ms. Martha Day,

then you shall find the Defendant guilty as an accessory after the fact.

If the State has failed to prove any one or more of theses elements beyond a reasonable doubt, then you shall find the defendant not guilty.

The trial judge refused to give this instruction to the jury after specifically finding that the case was "not a proper case for that instruction." A lesser-included offense instruction is appropriate only in those cases where a jury could find the defendant not guilty of the principal charge but guilty of a lesser offense. *Evans v. State*, 725 So. 2d 613, 664 (Miss. 1997); *Davis v. State*, 684 So. 2d 643, 656-57 (Miss. 1996).

¶17. In reviewing a request for lesser offense jury instruction, this Court will look at the evidence in the light most favorable to the defendant in determining whether such an instruction was warranted. *Taylor v. State*, 577 So. 2d 381, 383 (Miss. 1991). In the present case, it cannot be said that the case against Brown was so lacking that a jury could only find him *not* guilty of capital murder. The testimony of Walker and Bernard, coupled with Brown's own letters, provided sufficient evidence for a finding of guilt on the greater offense. Further, the record reflects no credible evidence from which a jury could reasonably find that Walker committed the murder and that Brown acted only as an accessory after the fact. This Court has held that a jury verdict should not be overturned as long as "there is credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense." *Davis v. State,* 586 So. 2d 817, 819 (Miss. 1991). There was simply no evidentiary foundation to support the giving of Instruction D-29. Consequently, there can be no error on the part of counsel in failing to appeal the refusal to give the instruction.

¶18. Brown also argues that it was error not to request that the jury be instructed on simple murder and armed robbery. Brown cites no authority for this proposition. This Court has found that a lesser-included offense instruction is not supported where the evidence of the "component crimes in the capital murder charge are so intertwined as to be virtually inseparable." *Conner v. State*, 684 So. 2d 608, 613 (Miss. 1996) (citing *Conner,* 632 So. 2d 1239, 1255 (Miss. 1993)). The underlying crimes of murder and armed robbery are the integral elements of the capital charge against Brown. The record does not support a finding that a reasonable juror could have found Brown guilty of the lesser component offenses yet not guilty of capital murder. Brown was therefore not entitled to a lesser-included offense instruction, and it cannot be said that trial counsel was ineffective for failing to request such an instruction. Further, it was Brown's theory of the case that someone else, i.e., Walker, committed both the robbery and the murder. This was clearly evidenced by Brown's testimony at the sentencing phase of the trial where the following exchange took place.

Q. All right, Mr. Brown, are you trying to tell this jury that you didn't commit this crime?

A. Yes.

Q. That's what your testimony is?

A. That's what it is.

It would have been entirely inconsistent with his defense for counsel to request jury instructions on simple murder and armed robbery.

¶19. The Court has also held that "any error in failing to give a lesser-included offense instruction was cured by the inclusion of an instruction requiring the jury to find [the defendant] guilty beyond a reasonable doubt of every element of the capital crime with which he was charged." *Id*. Instructions C-6, S-1, S-2 and D-3 required the jury in this case to find guilt beyond a reasonable doubt as to each component of the principal charge. Trial counsel did not err in failing to seek jury instructions which were inconsistent with the defense presented and which were not supported by the evidence. This issue is without merit.

*Whether Counsel was Ineffective for Failure to Retain Expert for Mitigating Evidence*

¶20. Brown claims that he suffered ineffective assistance of counsel because his attorneys failed to petition the trial court for expert assistance in developing mitigating evidence related to Brown's psychological state. The "failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." *Williams v. State,* 722 So. 2d 447, 450 (Miss. 1998) (citing *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir. 1997)). In the present case, Brown's attorneys did present a case in mitigation by calling four witnesses and submitting a 1984 report from the Louisiana Juvenile Reception and Diagnostic Center which characterized Brown as a non-violent individual with emotional problems.

¶21. The record shows that the trial court granted a defense motion to have Brown evaluated at the Mississippi State Hospital specifically for the purpose of developing mitigating evidence pursuant to Miss. Code Ann. § 99-19-101(6) (1994). Defense counsel reported, however, "The Defendant was evaluated at Whitfield for the purposes of mitigation defense. On the basis that the staff at Whitfield could not assist in any mitigation defense, no written reports were ever submitted." There is no further elaboration in the record as to whether there was no favorable evidence to be adduced or whether the State Hospital refused to prepare a report. It cannot be said what weight, if any, a juror might have given to such a report had one been prepared and submitted. *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992). It is entirely possible that favorable mitigating evidence of Brown's mental state might not have outweighed the aggravating circumstances in the jurors' minds, but such an opportunity was never afforded them. The very purpose of mitigation is to reveal evidence that the defendant is not as bad a person as might be believed from the evidence introduced at the guilt phase of the trial. *Eddmonds v. Peters,* 93 F.3d 1307, 1321 (7th Cir. 1996). In the present case, the trial court ordered a mental evaluation but no report was ever produced. It has been held that consideration of all relevant mitigating evidence is required at the sentencing phase because the imposition of the death sentence should reflect a reasoned, moral response to the defendant's background and character and the crime. *Russell v. Collins*, 998 F.2d 1287, 1291 (5th Cir. 1993). Brown should be allowed to present this issue to the trial court for a determination of whether trial counsel was ineffective in failing to seek other expert assistance when the State Hospital examination produced no report and whether such inaction resulted in any prejudice to his case at sentencing.

¶22. Brown also raises the peripheral claim that trial counsel was ineffective for failing to object to prosecutorial comment when he testified at the sentencing phase. Specifically, Brown argues that the prosecutor focused the jury's attention on his silence during the guilt phase of the trial by asking, "This is the first time anybody has heard of this; isn't it?" This question was posed by the prosecutor during cross-examination at the sentencing phase of the trial in response to Brown's statement that he was telling his side of the story. The prosecutor's comment cannot reasonably be construed as a comment on Brown's failure

to testify during the guilt phase of the trial.

¶23. Brown also contends that trial counsel erred in failing to appeal the admission of police testimony that Brown stated, "I don't know nothing about nothing," following his arrest. Brown perceives the introduction of this testimony as an improper comment on his silence during the guilt phase of the trial which should have been challenged on direct appeal. This instance of inaction does not appear to be professional error. Assuming for the sake of argument only that trial counsel should have acted differently, it certainly cannot be said that this purported omission would have resulted in a different outcome at either trial or on appeal had it not occurred. Brown's claims concerning these statements fail both prongs of the *Strickland* test. This issue is without merit.

### *Whether Counsel was Ineffective for Failure to Call Brown's Mother as a Witness.*

¶24. Brown's mother, Edna Turner, was subpoenaed as a defense witness at the sentencing phase of the trial but was not present in the court room when called. Brown now claims that this constituted ineffective assistance of counsel but cites no authority for the proposition. The decision to call a witness is generally considered a matter of trial strategy. *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985). This Court has held that the failure to call an available witness on a critical issue is only one factor to be considered in assessing a claim of ineffectiveness. *Leatherwood v. State,* 473 So. 2d 964, 969 (Miss.1985). This Court has recognized that the failure to call a mitigation witness is not presumptively ineffective because the many valid reasons for not calling a witness, e.g., their testimony may be more harmful than helpful. *King v. State,* 503 So. 2d 271, 274 (Miss. 1987); *Leatherwood,* 473 So. 2d at 969-70. Brown includes no affidavit from Ms. Turner as to how she might have testified, and it is speculative at best as to whether her testimony would have more likely than not altered the sentence imposed upon Brown.

¶25. Defense counsel did call Brown's sister and two nurses who testified that Brown was involved in the care of his quadriplegic stepfather. A former girlfriend testified that Brown was not a violent person by nature. Brown testified in his own behalf against the advice of counsel. This issue is without merit.

### *Whether Counsel was Ineffective for Failure to Object to Form of the Verdict*

¶26. Miss. Code Ann. § 99-19-101(3) (1994) provides that, in order for a jury to impose a death sentence, it must unanimously find in writing: (1) that the defendant actually killed, attempted to kill, or intended that a killing take place; (2) that the capital offense was committed during the commission of another enumerated felony; and (3) that there are insufficient mitigating circumstances to outweigh the aggravating circumstances. When the jury first returned from deliberations, the trial judge determined that their verdict was not in proper form and asked them to retire for the purpose of correcting the form of the verdict. The trial judge directed that they make the required statutory findings pursuant to the trial court's initial instructions.

> I'm going to ask you to retire and go over Instruction Number 2 as to the form of the verdict again. I don't believe this is exactly in the lawful form. I'm going to ask you to look at particularly the second paragraph. You're to make certain findings, and you did not make them. So I'm going to ask you to go back in and take from number 2.

Defense counsel made no objection at the time, and Brown now claims this to be ineffective assistance of

counsel. This Court has previously held that a trial court's oral instruction to the jury to reform its verdict is not error. ***Taylor v. State***, 672 So. 2d 1246, 1274 (Miss. 1996). In that case, the jury had not made a specific finding as to the presence or absence of aggravating factors, and the trial judge instructed in order make clear their findings. Defense counsel objected on grounds that the trial judge was instructing the jury to find aggravating circumstances. The objection was overruled, and the issue was rejected by this Court on direct appeal.

¶27. Further, Miss. Unif. R. Cir. Ct. Prac. 5.14 (as it existed at the time of trial) provided that if a verdict was so defective that the jury's intent could not be determined, then "the court shall, with proper instructions, direct the jurors to reconsider the verdict." In the present case, the trial judge properly instructed the jury to return for the purpose of making the verdict comply with the statute. Trial counsel was not ineffective for failing to object to the instruction. This issue is without merit.

### *Whether the Death Sentence was Disproportionate*

¶28. Brown asserts that this Court denied his right to due process on direct appeal by conducting a perfunctory analysis of his claim that his death sentence was disproportionate. The Court's opinion clearly reflects that it under undertook a serious review of whether Brown's death sentence was "disproportionate to the penalty imposed in similar case, considering both the crime and the defendant." Miss. Code Ann. § 99-19-105(3). The Court's opinion announced

> Since ***Jackson v. State***, 337 So. 2d 1242 (Miss. 1976), this Court has upheld the imposition of the death penalty in the cases listed in the appendix. We have carefully reviewed those cases in the appendix and compared them with the case and sentence *sub judice*.
>
> We find that the sentence of death in the case *sub judice* was not imposed under the influence of passion, prejudice, or any other arbitrary factor; that the evidence supports the jury's finding of statutory aggravating circumstances listed in Miss. Code Ann. § 99-19-101(5) (Supp. 1983); and, after considering the crime and the appellant, we find further that the sentence of death in this case is not excessive or disproportionate to other similar case in which such sentence has been imposed.

***Brown***, 682 So. 2d at 357. No further explanation was necessary. This issue is without merit.

### CONCLUSION

¶29. The application for post-conviction relief is granted in part only as to the issue of ineffective assistance of counsel for failure to seek an independent mental evaluation. The ancillary requests for investigative funds, discovery and an evidentiary hearing should be filed in the trial court. In all other respects, the application is denied.

¶30. **APPLICATION FOR POST-CONVICTION RELIEF GRANTED IN PART AND DENIED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE AND COBB, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J.**

**SMITH, JUSTICE, DISSENTING:**

¶31. Joseph Patrick Brown claims that his trial counsel was ineffective for failing to secure expert assistance in preparing mitigating evidence. The majority agrees and remands to the trial court for the limited determination of the issue concerning counsel's "failure to seek an independent mental evaluation." Majority at 19. I disagree with the majority because, in my view, the decision not to pursue testimony and/or a written report from the doctors at Whitfield was solely a trial strategy decision. The majority has applied trial strategy to other issues within its opinion, but ignores what trial counsel knew about the lack of mitigation evidence on this issue, and their obvious trial strategy in avoiding relying upon the doctors at Whitfield who evaluated Brown.

¶32. The record reveals that Brown's trial counsel did in fact investigate the possible use of psychological mitigation evidence when they sought to have him examined and evaluated at Whitfield. Brown's counsel did use limited psychological mitigation evidence, i.e., the 1984 Louisiana Juvenile Reception and Diagnostic Center report, Exhibit 2, at sentencing, which apparently trial counsel believed would be beneficial to Brown's case. The report only characterized Brown as being non-violent with emotional problems. The attorneys also used four witnesses who offered mitigation evidence. Thus, the case at bar is not one where no mitigation evidence was offered to the jury as in *Williams v. State*, 722 So. 2d 447, 450 (Miss. 1998) (*citing* **Williams v. Cain**, 125 F.3d 269, 277 (5th Cir. 1997)). *See also* **Woodward v. State**, 635 So. 2d 805, 810 (Miss. 1993), where, again, trial counsel offered no mitigation evidence in support of the defendant.

¶33. Directly on point is this Court's decision in *Foster v. State*, 687 So. 2d 1124 (Miss. 1996). Foster was convicted and sentenced to death for capital murder. On appeal, Foster argued that his trial counsel failed to adequately present mitigation evidence, resulting in ineffective assistance of counsel at the sentencing phase. *Id.* at 1130. Despite the testimony of two witnesses and thirteen mitigating factors presented to the jury by defense counsel during the sentencing phase, Foster faulted his attorney for not further investigating his psychiatric condition. Specifically, Foster argued that his attorney should have provided the jury with a psychological report prepared by a neutral expert at Whitfield per order of the court. Foster contended the report would have shown he suffered from mental impairment at the time of the offense. The expert's report, however, clearly stated that Foster knew the difference between right and wrong and had no mental disorder. *Id.* at 1131. This Court held that the attorney's tactical decision not to investigate psychological evidence did not deprive the defendant of effective assistance of counsel where counsel could have judged that the report would have been harmful rather than mitigating. *Id.* at 1131. In fact, this Court commended the attorney for circumventing the document and held that the decision not to pursue psychological testing was a reasonable decision. *Id.* at 1132-33.

¶34. It is equally clear from this record that Brown's trial counsel was aware that Brown was in fact evaluated at Whitfield and that for purposes of mitigation "the staff at Whitfield could not assist." The doctors opined their testimony could be of no assistance to Brown on mitigation at sentencing. Why then should Brown's trial attorneys be second guessed for making the wise decision to not call any of the doctors as witnesses on Brown's behalf. They should not be faulted for their decision here. Obviously as a matter of trial strategy his attorneys elected not to seek the use of a written report from the doctors at Whitfield, much less utilize their testimony at trial. The doctors' testimony probably would have been harmful under the circumstances as revealed in this record. Furthermore, had defense counsel requested a written report from the doctors and intended to offer it into evidence, the State would have been entitled to a copy of that report. The State then could very well have used the report against Brown at trial if he offered evidence on

the issue. *See* Unif. Circ. & County Court R. 9.04(C)(3). Not only could the report not have been helpful, but it might have been harmful to Brown's defense. This decision by trial counsel was unquestionably reasonable trial strategy.

¶35. Additionally, Brown has made no attempt at showing that an expert would have aided his defense. *See Caldwell v. Mississippi*, 472 U.S. 320, 323, 105 S. Ct. 2633, 2637, n.1, 86 L. Ed. 2d 231 (1985) (stating that a defendant is not entitled to an expert where he offers little more than undeveloped assertions that the requested assistance would be beneficial). Brown clearly does not even suggest, much less present specific evidence or make a "preliminary showing" that his sanity was at issue at trial, thus he was not per se entitled to an expert on the issue. *Williams v. Collins*, 989 F.2d 841, 844-46 (5th Cir. 1993) (*citing Volanty v. Lynaugh*, 874 F.2d 243 (5th Cir. 1989); *Volson v. Blackburn*, 794 F.2d 173 (5th Cir. 1986)). *See also Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S. Ct. 1087, 1096, 84 L. Ed. 2d 53 (1985) (holding that when a defendant makes a threshold showing to the trial court that his sanity at the time of the offense is to be a significant factor at trial, the defendant must be provided access to a competent psychiatrist in preparation of the defense). Equally important as it relates to the case at bar is that a similar requirement exists in order to obtain an expert to assist in the presentation of mitigating evidence. *Goodwin v. Johnson*, 132 F.3d 162, 189 (5th Cir. 1997) (*citing Clisby v. Jones*, 960 F.2d 925, 929 (11th Cir. 1992) ("*Ake* requires a state to provide the capital defendant with access to a competent psychiatrist upon a preliminary showing to the trial court that the defendant's mental status is to be a significant factor at sentencing.")). Brown has made no such showing.

¶36. Brown is not constitutionally guaranteed errorless counsel. *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988). This Court has also held that there is a "rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." *Stringer v. State*, 627 So. 2d 326, 328-29 (Miss. 1993). Along with the presumption that counsel's conduct is within the wide range of reasonable conduct, there is also a presumption that decisions made are strategic. *Dufour v. State*, 483 So. 2d 307, 310 (Miss. 1985) (*citing Murray v. Maggio*, 736 F.2d 279, 292 (5th Cir. 1984)). Brown has failed to rebut either presumption by his mere bald allegations without support. Additionally, Brown has failed to show any such alleged deficiency here constituted prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2062, 80 L. Ed. 2d 674 (1984). This Court has held that if the post-conviction petition fails on either of the two prongs of *Strickland*, the proceeding ends there. *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996). Finally, and more importantly, due to his unsupported allegations, Brown has wholly failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991) (*citing Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). Certainly it cannot be said that Brown's conviction or sentence resulted from "a breakdown of the adversary process that renders the result unreliable." *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) (*citing Strickland*, 466 U.S. at 687, 104 S. Ct. at 1064).

¶37. For these reasons, I respectfully dissent.

**MILLS, J., JOINS THIS OPINION.**