991 So.2d 662 (2008)
Booker T. WATSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01424-COA.
Court of Appeals of Mississippi.
September 30, 2008.
*663 Brenda Jackson Patterson, attorney for appellant.
Office of the Attorney General by Laura Hogan Tedder, attorney for appellee.
Before LEE, P.J., ROBERTS and CARLTON, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. A jury in the Circuit Court of Sunflower County found Booker T. Watson[1] guilty of possession of more than 0.1 gram but less than 2.0 grams of cocaine. Watson was sentenced to serve eight years in the custody of the Mississippi Department of Corrections. He was also ordered to pay a fine of $20,000, $250 to the Crime Victims' Compensation Fund, and a fee of $300 to the Mississippi Crime Laboratory. Watson moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. His motion was denied by the trial court.
¶ 2. Watson now appeals, asserting the following issues: (1) the trial court erred in allowing the State to use peremptory strikes for reasons unsubstantiated by the record; and (2) the trial court erred in failing to grant a continuance. Finding no reversible error, we affirm.

FACTS
¶ 3. Police in Ruleville, Mississippi were conducting surveillance for suspected narcotics trafficking at several locations in the city. While watching for suspicious activity at the Ruleville city park, the officers noticed several people walk up to Watson and make hand-to-hand exchanges with him. Arobic Winfrey was also in the park with Watson. When the officers approached Watson, he turned to walk away. According to the testimony of one of the *664 officers, Watson reached into his left pocket, pulled out a red matchbox, and dropped it to the ground. The officers frisked Watson and Winfrey and found no narcotics. However, the matchbox contained a rock-like substance that resembled cocaine. Watson was arrested for possession of cocaine.

DISCUSSION

I. DID THE TRIAL COURT ERR IN ACCEPTING THE STATE'S RACE-NEUTRAL REASONS FOR ITS PEREMPTORY STRIKES?
¶ 4. Watson, an African American male, argues that the State failed to give race-neutral explanations for using five of its six peremptory challenges to strike African American jurors. Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) provides the procedure for trial courts to follow when peremptory challenges are used to remove members of an identified racial group from jury service based upon nothing more than their race. To successfully assert a Batson challenge, the following must occur:
First, the defendant must establish a prima facie case of discrimination in the selection of jury members. The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.
Thorson v. State, 721 So.2d 590, 593(¶ 2) (Miss.1998) (internal citations omitted).
¶ 5. This Court gives great deference to the trial court's finding of whether or not a peremptory challenge was race neutral. Id. at 593(¶ 4). "[W]e will not overrule a trial court on a Batson ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." Id.
¶ 6. The prosecution struck peremptorily Juror 6, an African American female; Juror 8, an African American male; Juror 11, an African American female; Juror 12, an African American male; and Juror 13, an African American male. Watson's attorney requested that the trial court instruct the State to give race-neutral reasons for their challenges. The State replied as follows:
Certainly. Number 6, I've had problems with her family members as well as she runs with the Tigues from Inverness who are notorious dope dealers.
....
Number 8 ... served on a jury in the past and voted not guilty. It was a good case. My recollection was it was drugs. I don't remember, but it was a good case, and he voted not guilty.
....
Number 11 ... my information is that she is on drugs. Number 12, my information is that he runs with the dopers. Even though he sounds good, my information is he runs with the dopers.
....
And Number 13, my information is that he uses drugs.
After hearing the State's reasons, the trial judge found as follows: "All right. The Court has determined that the State has given race-neutral reasons for its challenges and they were not racially motivated." The trial judge then asked if Watson's attorney had a response to the *665 State's reasons. Watson's attorney responded, "No, sir."
¶ 7. Nothing in the record suggests that race played a role in the arrest or prosecution of Watson. The race of the two arresting officers is not mentioned in the record. The record is quite sparse concerning the racial composition of the entire venire panel, which consisted of approximately fifty people. Of the seventeen members on the venire panel first considered for peremptory challenges by the State for tendering to the defense, nine of those seventeen were African Americans. The State exercised five of its six available strikes. The State accepted and tendered four African American panel members even though it had one remaining peremptory strike. There is no indication in the record of the race of any of the six jurors peremptorily stricken by the defense. Likewise, there is no indication in the record of the race of the final juror excused by the State when it used its last peremptory strike. Needless to say, no information exists in the record to indicate the racial composition of the jury that actually tried Watson. Of significance, the defense had an opportunity to challenge the reasons given by the State as pretext for intentional racial discrimination, but the defense declined to respond. When a Batson challenge is appealed, "[i]t is the responsibility of the appellant to furnish the court with a record which is adequate to review the issues presented." Ward v. State, 958 So.2d 1233, 1236(¶ 9) (Miss.Ct. App.2006) (citing Williams v. State, 522 So.2d 201, 209 (Miss.1988)).
¶ 8. Since Watson's attorney did not rebut the State's race-neutral explanations, the trial judge correctly based his decision solely on the reasons given by the State. Thorson, 721 So.2d at 593(¶ 2). Watson argues that, regardless of his failure to rebut the State's explanations, the trial court's ruling was plain error. Smith v. State, 984 So.2d 295, 301(¶ 14) (Miss.Ct. App.2007) (the plain-error rule is used where the defendant fails to make a contemporaneous objection and the defendant's substantive/fundamental rights are affected).
¶ 9. Watson argues that the State failed to individually voir dire the jurors which indicated that the State's alleged race-neutral reasons were pretextual. Watson cites Flowers v. State, 947 So.2d 910 (Miss. 2007) for the assertion that "[l]ack of support in the record for the reason stated has been held by this court to be an indicator of pretext." Id. at 928(¶ 41). We find Watson's reliance on Flowers to be misplaced. The facts in Flowers are distinguishable from the case at hand. In Flowers, the prosecutor argued that a juror was struck because she had formed an opinion on Flowers's guilt. Id. at 927(¶ 41). However, the record indicated that the juror answered "no" to the question of whether she had formed an opinion regarding Flowers's guilt or innocence. Id. The prosecutor's argument in Flowers lacked support in the record because it was incorrect. Further, although lack of support in the record may be an indication of pretext, "the basis for the prosecutor's strike need not be in the record." Manning v. State, 765 So.2d 516, 520(¶ 10) (Miss.2000); see also Thorson, 721 So.2d at 597(¶ 23) (prosecutor acting in good faith may offer a race-neutral reason supplied to him by a third person).
¶ 10. In discussing the prosecution's reliance on information supplied by the police, the supreme court has held as follows:
We decline to set any limits on the prosecutor's use of any legitimate informational source heretofore or hereafter available as to jurors. Furthermore, the prosecutor does not have to question a juror in open court about such information *666 before using it as a racially neutral ground to make a peremptory strike, as long as the source of the information and the practice itself are not racially discriminatory.
Snow v. State, 800 So.2d 472, 482(¶ 26) (Miss.2001) (quoting Brown v. State, 749 So.2d 82, 87(¶ 13) (Miss.1999)). The prosecutor stated that she had problems with family members of Juror 6; Juror 8 had served on a jury of hers in the past and voted against the State; and she had information that Jurors 11, 12, and 13 were drug users or associated with known drug dealers. The prosecutor was not required to individually voir dire the jurors, and no assertion has been made that the source of the State's information or the practice itself was racially discriminatory. Therefore, we find that the trial court did not err in denying Watson's Batson challenges.

II. DID THE TRIAL COURT ERR IN DENYING WATSON'S MOTION FOR A CONTINUANCE?
¶ 11. Watson subpoenaed Winfrey, who was in the park with him when he was approached by the police, to testify. Winfrey was present at trial and was told by Watson's counsel to wait in the witness room. At some point before being called to testify, Winfrey left the courthouse. Watson's counsel informed the trial court that Winfrey was the only witness with significant information that was material to Watson's defense, and that his testimony would prevent Watson from being exposed to cross-examination. Watson's counsel moved for a continuance until Winfrey was found and made the following proffer regarding Winfrey's testimony:
That witness, among other things, would verify alternative information to what these officers said; that being that they did [sic]they were stopped and patted down by these officers. That during that patat the conclusion of the pat-down, when no drug evidence or any other illicit evidence was determined to be on either person, that they were released and told that they could both walk on. The officers then apparently went back, recovered a match box in the park, and then re-approached the defendant and stopped him at another location in town.... [s]till within the city limits of Ruleville but outside of the park.
....
Further, this defendant made some admissions in my presence this morning. I know he would probably have the right to counsel concerning those statements. I would intend to ask him questions about his liability or participation in the crime that has been alleged here today, and I believe ifif he did answer those questions, those would exculpate Mr. Watson.
If Winfrey testified consistent with the proffer, his testimony would conflict with that of the police officer's testimony, which was that Watson was arrested in the park. Also, Watson's counsel implied that Winfrey would possibly testify that the narcotics belonged to him.
¶ 12. The police were notified to be on the lookout for Winfrey that morning, and the trial court gave Watson's counsel an hour-and-a-half during the lunch break to locate Winfrey. The trial court told the parties that if Winfrey was not found during the lunch break, the trial would go forward because, even if Winfrey were present, he could choose not to testify by invoking the Fifth Amendment. Watson's counsel and local law enforcement officials searched for Winfrey but could not find him. Watson's counsel renewed his motion for a continuance.
*667 ¶ 13. Our standard of review of the grant or denial of a motion for continuance is abuse of discretion. Jacobs v. State, 870 So.2d 1202, 1205-06(¶ 7) (Miss.2004). "We will reverse the denial of a motion for continuance only when manifest injustice appears to have resulted from the decision to deny the continuance." Id. at 1205. In analyzing whether there was an abuse of discretion or manifest injustice, we must determine whether Watson was prejudiced by the absence of Winfrey's testimony. Id. at 1205-06.
¶ 14. Watson argues that he was prejudiced because he would not have testified and been subject to cross-examination had Winfrey testified. Watson also suggests that it is common for prosecutors to threaten witnesses with arrest if they testify. Winfrey had an outstanding warrant for his arrest based on an alleged violation of his probation and parole. Although not stated in the record, Watson argues that common sense dictates that Winfrey was informed of the arrest warrant by the prosecutor while in the courthouse and left to avoid being arrested.
¶ 15. We find Watson's arguments to be without merit as we cannot find that Watson was prejudiced by Winfrey's absence. As stated by the trial court, even if Winfrey was present to testify, he would have been advised of his right not to testify under the Fifth Amendment. Further, Winfrey's testimony, if consistent with the proffer, would have been duplicative of Watson's testimony. Therefore, we find that the trial court did not abuse its discretion in denying Watson's motion for continuance. Watson's conviction and sentence are affirmed.
¶ 16. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF MORE THAN 0.1 GRAM BUT LESS THAN 2.0 GRAMS OF COCAINE AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY $250 TO THE CRIME VICTIMS' COMPENSATION FUND, $300 TO THE MISSISSIPPI CRIME LABORATORY, AND A FINE OF $20,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] We note that Watson was indicted under the name "Booker T. Washington." A motion was later filed to amend the indictment to reflect the correct name of "Booker T. Watson."