WALLER, Chief Justice,
for the Court:
¶ 1. In 1994, Joseph Patrick Brown (a.k.a. Peanut Brown) was convicted of capital murder for shooting a convenience-store clerk to death on August 8, 1992, during the commission of an armed robbery. Brown was sentenced to death by lethal injection. His conviction and sentence were affirmed by this Court in Brown v. State, 682 So.2d 340 (Miss.1996). Pamela Farrington and Donald Ogden represented Brown at trial and on direct appeal. On March 17, 1998, Brown filed an application for post-conviction relief, which *728 this Court granted, in part, for the sole purpose of determining whether Brown’s trial counsel was ineffective for failing to seek an independent psychological evaluation of Brown for use as mitigation evidence. Brown v. State, 749 So.2d 82, 93 (Miss.1999). A special judge, appointed to hear the matter, denied Brown’s petition for post-conviction relief, and Brown now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. The following statement of facts is taken from this Court’s opinion in Brown v. State, 682 So.2d 340, 343-44 (Miss.1996):
[Djuring the late evening hours of Friday, August 7, 1992 and the early morning hours of Saturday, August 8, 1992, Brown and his girl-friend at the time, Rachel Walker (“Walker”), were cruising the area of Natchez, Mississippi, looking for drugs. Brown and Walker bought and smoked crack cocaine at several locations during that time period.
In the early hours of August 8, Brown turned the vehicle he was driving into the lot of the Charter Food Store located on Highway 61 South in Natchez, Mississippi, and stopped the vehicle next to the gas pumps. Walker, remaining in the vehicle, observed Brown pump gas into the vehicle and then walk into the store. While Brown was inside the store, Walker observed him walk around briefly and then approach the counter where the cash register and clerk were located. While Brown was at the counter, Walker observed the clerk, Martha Day (“Day”), grab her chest, turn and fall to the floor. Walker didn’t see Day again. It was later to be discovered that Day was killed during an apparent robbery at approximately 2:45 a.m. Day was shot four times — once in the head, once through the heart, and twice in the back.
Walker observed Brown exit the store carrying a cash register among other items. Brown returned to the vehicle and placed the cash register and a handgun on the front seat. Upon entering the vehicle, Brown allegedly told Walker, “You better not move, and you better not say anything. If you love me you won’t say anything.” Brown started the vehicle and Brown and Walker headed into town.
[[Image here]]
Throughout the morning of August 8 and continuing that day and the next, Walker, an eye-witness to the robbery, made several calls to the Natchez Police Department attempting to tell them about the incident at Charter Food Store. Within twenty-four hours of the robbery, the police received information that a .22 caliber handgun had been pawned by Walker; and approximately forty-eight hours after the robbery, the police recovered a two-dollar bill with a serial number matching that of the one kept in the cash register at the Charter Food Store. The serial number had been noted in an effort to aid police in their investigation in case of a robbery at the store. Walker proved to be the source of that two-dollar bill. With this information, the police began searching for Walker and Brown. On August 11, 1992, they were spotted; both Walker and Brown attempted to elude police by fleeing and hiding. When confronted by the police, Brown blurted out, ‘You got me for driving the car.” Brown and Walker were arrested and charged with the murder of Day.
[[Image here]]
While incarcerated in the Adams County Jail, Brown allegedly confided to a fellow inmate, Larry Bernard (“Bernard”), *729 that he took the cash register from the Charter Food Store and that he shot Day three or four times. Bernard notified the Adams County Sheriffs Department of Brown’s communication. Testimony revealed that Bernard received no favorable treatment or special consideration for his testimony at trial.
Walker, an ex-girlfriend, eye-witness and accessory after the fact, testified for the State. Through her testimony, the cash register, two-dollar bill and handgun were linked to Brown. Walker’s testimony also placed Brown at the scene of the crime as the triggerman. Walker’s testimony was corroborated by a fellow inmate of Brown and the State’s ballistics expert, in addition to Brown’s own incriminating statements made in writing to Walker while incarcerated. A jury ... found Brown guilty as charged and returned a verdict that Brown suffer death.
Brown, 682 So.2d at 343-44. At the sentencing phase of the trial, Brown’s attorneys presented a case in mitigation by calling four witnesses and submitting a 1984 report from the Louisiana Juvenile Reception and Diagnostic Center which characterized Brown as a nonviolent individual with emotional problems. At defense counsel’s request, the trial court had ordered Brown evaluated at the Mississippi State Hospital at Whitfield specifically for the purpose of developing mitigating evidence pursuant to Mississippi Code Section 99-19-101(6) (Rev.2007). Defense counsel later reported that “[t]he Defendant was evaluated at Whitfield for the purposes of mitigation defense. On the basis that the staff at Whitfield could not assist in any mitigation defense, no written reports were ever submitted.” At the con-elusion of evidence, Brown was sentenced to death by lethal injection. Id. at 344.
¶ 3. On direct appeal, this Court affirmed Brown’s conviction and sentence. Id. at 357. Brown then filed an application with this Court for leave to file a petition for post-conviction relief. This Court granted Brown’s application, in part, only as to the issue of ineffective assistance of counsel, based on counsel’s alleged failure to seek an independent mental evaluation to be used for mitigation. Brown v. State, 749 So.2d 82, 93 (Miss.1999). This Court appointed Judge Isadore W. Patrick to hear the matter. On November 20, 2009, Judge Patrick issued an opinion denying Brown’s petition for post-conviction relief, holding that Brown’s trial counsel had not acted deficiently so as to satisfy a claim of ineffective assistance. Brown now appeals this decision.
ISSUES
¶ 4. Brown raises two issues[1] on appeal:
I. Whether the circuit court erred by not granting Brown’s motion for discovery under Mississippi Rule of Appellate Procedure 22.
II. Whether the circuit court erred by finding that Brown’s trial counsel’s failure to secure an expert report and/or expert mental health testimony on mitigating circumstances did not constitute “deficient performance” under Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny.
STANDARD OF REVIEW
¶ 5. ‘When reviewing a lower court’s decision to deny a petition for post convic *730 tion relief this Court will not disturb the trial court’s factual findings unless they are found to be clearly erroneous.” Doss v. State, 19 So.3d 690, 694 (Miss.2009). This Court reviews discovery matters for abuse of discretion. Ford Motor Co. v. Tennin, 960 So.2d 379, 390 (Miss.2007); see also Howard v. State, 945 So.2d 326, 361 (Miss.2006) (reviewing trial court’s denial of post-conviction petitioner’s discovery request for abuse of discretion).
DISCUSSION
1. Brown was not improperly denied dis-covenj.
¶ 6. Brown claims he was denied[2] discovery under Mississippi Rule of Appellate Procedure 22(c)(4)(h). This rule says that, upon appointment of counsel to represent the petitioner, or upon the petitioner retaining private counsel, the petitioner’s trial and appellate counsel shall make available their complete files relating to the conviction and sentence. M.R.A.P. 22(c)(4)(h). It also requires the State to make available “the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed and the prosecution of the petitioner.” Id. Brown says that he never received these files, and that the trial court erred in denying his motion for their production.
¶ 7. Section (c)(4) of Rule 22 governs matters “Preliminary to Proceedings in the Supreme Court.” M.R.A.P. 22(4). Section (c)(4)(h) of Rule 22 is intended to allow a petitioner to gather information to support an application to the Supreme Court for leave to file a motion for post-conviction relief in the tidal court. See Russell v. State, 819 So.2d 1177, 1178-79 (Miss.2001). If this Court grants such an application and directs its filing in the trial court, the proceedings are then governed by Mississippi Code Sections 99-39-13 through 99-39-23. Miss.Code Ann. § 99-39-27(7)(b) (Rev.2007). And under Section 99-39-15, a petitioner is allowed discovery “available under the Mississippi Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.” Miss. Code Ann. § 99-39-15 (Rev.2007) (emphasis added); see also Roland v. State, 666 So.2d 747, 751 (Miss.1995) (stating that a petitioner is entitled to discovery under Section 99-39-15 “upon good cause shown and in the discretion of the trial judge”) (quoting Fleming v. State, 553 So.2d 505 (Miss.1989)).
¶ 8. Once this Court granted, in part, Brown’s application, Section (c)(4)(h) of Rule 22 no longer provided the mechanism for discovery. After remand to the trial court for an evidentiary hearing, Brown could seek discovery pursuant to only Section 99-39-15. This section gives the trial judge discretion in granting or denying a petitioner’s request for discovery, and says that the judge may grant such a request “for good cause shown.” Miss.Code Ann. § 99-39-15 (Rev.2007). Accordingly, the question before this Court is whether the trial court abused its discretion in denying Brown’s request. Roland, 666 So.2d at 751.
¶ 9. This Court granted Brown’s application for the sole purpose of examining whether Brown’s trial counsel was ineffective for failing to seek an independent *731 mental evaluation. Brown, 749 So.2d at 93. The Court denied Brown’s application in all other respects. Id. Accordingly, the post-conviction hearing was limited to this single issue. After a date for the eviden-tiary hearing was set, the State requested that the trial court order the release of all medical records concerning Brown’s evaluation at Whitfield. Furthermore, the State subpoenaed both of Brown’s trial attorneys as well as Reb McMichael, M.D., and Criss Lott, Ph.D., both of whom were involved in Brown’s evaluation at Whitfield.
¶ 10. In his motion to the trial court, filed five days before the hearing, Brown stated that, without discovery, he “[could not] be adequately prepared for the evidentiary hearing required by the Supreme Court.” Brown did not say why he could not prepare adequately without the requested discovery, nor did he address why access to his medical records, access to the doctors who evaluated him, and access to his trial counsel were not sufficient to prepare him for a hearing on whether his counsel was ineffective for failing to seek an independent medical evaluation. As such, Brown did not show “good cause” for why his discovery request should be granted.
¶ 11. In Hubanks v. State, 952 So.2d 254 (Miss.Ct.App.2006), the Court of Appeals upheld the denial of a post-conviction petitioner’s motion for discovery. The trial judge had denied the request because, inter alia, the discovery requests would not reveal evidence pertinent to the matter at issue on PCR. Id. at 256. The judge held that there was not “good cause” to grant the discovery request. Id. at 257. The Court of Appeals recognized that “the decision whether or not to allow discovery rests fully within the discretion of the trial judge.” Id. at 256. The Court held that the judge’s reasoning was sound and affirmed the denial of the discovery request. Id. at 257.
¶ 12. Like the petitioner in Hubanks, Brown has not shown why his discovery request would reveal evidence relevant to the matter at issue on PCR—whether his counsel was ineffective for failing to seek an independent medical evaluation for mitigation. Accordingly, Brown has not shown “good cause” for why his discovery request should be granted. Keeping in mind the sole issue for which Brown’s application was granted, we cannot say that the trial court abused its discretion in denying Brown’s discovery request.
II. Brown’s trial coimsel’s performance was not deficient.
¶ 13. “The benchmark for judging any claim of ineffectiveness must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that “counsel made errors so serious that [he or she was] not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Secondly, a defendant must prove that the “deficient performance prejudiced the defense,” which requires showing that “counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Id. Absent both showings, a defendant may not prevail on his claim that his counsel was ineffective. Id.
¶ 14. A reviewing court must “strongly presume that counsel’s conduct falls within a wide range of reasonable *732 professional assistance, and the challenged act or omission might be considered sound trial strategy.” Liddell v. State, 7 So.3d 217, 219-20 (Miss.2009). And even where professional error is proven, this Court must determine if there is a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Mohr v. State, 584 So.2d 426, 430 (Miss.1991).
¶ 15. Consideration of relevant mitigating evidence is generally required at the sentencing phase because the imposition of the death sentence should reflect a reasoned, moral response to the defendant’s background and character and the crime. Russell v. Collins, 998 F.2d 1287, 1291 (5th Cir.1993). This Court has held that “[i]t is critical that mitigating evidence be presented at capital sentencing proceedings.” State v. Tokman, 564 So.2d 1339, 1342 (Miss.1990) (citing Leatherwood v. State, 473 So.2d 964, 970 (Miss.1985)). The Court recognized in Tokman that “counsel has a duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case.” Tokman, 564 So.2d at 1342.
¶ 16. This Court granted Brown’s application for leave to file a petition for post-conviction relief for the purpose of determining “whether trial counsel was ineffective in failing to seek other expert assistance when the State Hospital examination produced no report and whether such inaction resulted in any prejudice to his case at sentencing.” Brown, 749 So.2d at 91. However, in the trial court and now on appeal, Brown has focused his ineffectiveness argument almost exclusively on trial counsel’s decision to forego presenting an expert report on Brown’s psychological evaluation and testimony from the State Hospital doctors. He claims that his counsel was deficient by preventing this evidence from being presented as mitigation, and that he was prejudiced by such deficiency.
¶ 17. It is clear from the record that Brown’s attorneys, after discussing Brown’s psychological evaluation with the State doctors, decided not to have the doctors produce a report after determining that such report would be more harmful than helpful. At the post-conviction evi-dentiary hearing, Dr. Lott, former director of the Outpatient Forensics Unit of the State Hospital, testified that such course of action was not unusual:
Whenever we evaluate someone at this stage, the mitigation stage, and I do it in capital — well, several capital cases, I always will discuss my results with the counsel, the attorney. The attorney then decides whether or not they want me to develop a report, which they would subsequently use in trial. And I give them my impression. I give them my understanding of the diagnosis and how I see the facts — or the case as it applies to my psychological evaluation. In some cases it’s advantageous and in some cases it’s not. I’ve probably been asked more times than not to not generate a report. Or if I generated a report, more times than not, it’s not been used in trial, because the report was not advantageous.
With regard to Brown’s condition, Dr. Lott further testified, “I’m not saying there’s not any mitigation. There is, though, a significant amount of information that might be damaging, might be harmful.” Both of Brown’s trial attorneys, Pamela Farrington and Dan Ogden, testified at the hearing. Farrington stated that she would have asked that a report be generated had there been any hope that such a report would be more beneficial than harmful. *733 Similarly, Ogden testified, “to make it real clear: It’s not that they wouldn’t submit it; they would have submitted a report, but we asked them not to write a report, to put it in writing.” When asked if this decision was based on trial strategy, Ogden replied affirmatively that it was. The other doctor involved, Dr. McMichael, testified that, based on his review of the records, a mitigation report would not have been helpful.
¶ 18. Mississippi Code Section 99-39 — 9(e) (Rev.2007) requires that an application for post-conviction collateral relief be supported by the affidavits of witnesses who will prove the petitioner’s claims. Brown has not shown just what mitigation evidence might have been developed through the production of a psychological report, nor has he shown what would have been garnered from an additional psychological evaluation. Brown has offered neither evidence nor testimony from other experts as to any failings or omissions by the doctors retained by Brown’s trial attorneys. Although he had the opportunity to do so, Brown never asked Drs. Lott and McMichael just what issues might have been pursued that might have made a difference to a jury.
¶ 19. Brown’s trial attorneys were not responsible for the doctors’ findings as to the lack mitigation evidence. This is not a case where no mitigation evidence was presented; it is simply a case where a conscious decision was made to go forward with certain witnesses but not others. The record here does not reflect that the decision of Brown’s attorneys constitutes a professional error. Their decision was calculated to best serve Brown’s interests at trial. See Spicer v. State, 973 So.2d 184, 192 (Miss.2007) (decision not to use defendant’s mental evaluation as mitigation presumed strategic); see also Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (strong presumption that counsel’s conduct constitutes “sound trial strategy”).
¶ 20. Furthermore, Brown has made no showing that additional psychological evaluation would have been beneficial in mitigation. A defendant “cannot demonstrate that his trial counsel was deficient or any resulting prejudice from mere undeveloped assertions that another expert would have been beneficial.” Jordan v. State, 912 So.2d 800, 817 (Miss.2005). Brown therefore suffered no deprivation of effective counsel under the Sixth Amendment. This issue is without merit.
CONCLUSION
¶ 21. The trial court did not abuse its discretion in denying Brown’s motion for discovery, as Brown failed to show “good cause” for his request. Furthermore, Brown has not demonstrated that his trial counsel acted deficiently in not introducing, as mitigation, a report of Brown’s psychological evaluation or in further investigating Brown’s psychological state. We therefore affirm the trial court’s decision to deny Brown’s petition for post-conviction relief.
¶ 22. AFFIRMED.
CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. DICKINSON, P.J., JOINS IN PART.

. Although Brown's brief lists three issues on appeal, his third issue- — whether the circuit erred in denying him post-conviction relief— is wholly covered in the second issue-whether Brown’s trial counsel provided ineffective assistance.

. While the record does not contain a specific order of the court denying Brown’s discovery request, the court, at the hearing, made references to "preliminary rulings” on an outstanding motion and declared that the case was ready to be heard. Both Brown and the State argue on appeal under the assumption that the discovery request was denied.