811 So.2d 286 (2001)
Annie Ruth BOGAN a/k/a Annie Ruth Lloyd, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01106-COA.
Court of Appeals of Mississippi.
January 16, 2001.
*287 Jim Waide, Victor Israel Fleitas, Tupelo, Martin D. Crump, Attorneys for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
EN BANC.

ON MOTION FOR REHEARING
KING, P.J., for the Court:
¶ 1. This cause has returned to this Court upon Bogan's motion for rehearing. That motion is granted, the prior opinion withdrawn and this opinion substituted in its stead.
¶ 2. Bogan was convicted in the Monroe County Circuit Court of aggravated assault upon a police officer. Aggrieved by that conviction, Bogan has appealed and raises four issues for this court's consideration. Those issues are:(1) whether the circuit court improperly allowed Dr. Chris Lott to testify as an expert witness in the absence of some known scientific test to determine right from wrong; (2) whether the circuit court improperly excluded the testimony that Bogan did not comprehend the difference between right and wrong, while allowing unqualified expert testimony on this subject and allowing the prosecutor to comment on the lack of lay testimony; (3) did the circuit court improperly refuse Bogan a continuance to review the transcript of the first trial; and (4) did the circuit court deny equal protection to Bogan, by allowing the prosecution to engage in racially discriminatory jury selection, in violation of Batson.
¶ 3. Because this court finds merit in Bogan's fourth issue, it reverses and remands this matter.

FACTS
¶ 4. In August 1999, Monroe County Sheriffs Department personnel, pursuant to a court order, evicted Bogan from her home. Bogan resisted the eviction and was subsequently arrested on a charge of trespass. Bogan was then placed in a patrol car for transportation to the county jail.
¶ 5. While being transported, Bogan pulled a pistol from her person and pointed it at the head of the deputy and threatened to kill him. A struggle for the gun ensued as Bogan attempted to discharge it. The gun's discharge was prevented when the deputy's thumb was placed in front of the firing pin, injuring his thumb but preventing discharge of the pistol.

ANALYSIS

I

WAS BOGAN DENIED EQUAL PROTECTION IN VIOLATION OF BATSON?
¶ 6. During the process of jury selection, the State attempted to exercise 5 of its peremptory challenges against Blacks. The trial court allowed four of these peremptory challenges. Bogan objected to the exercise of these challenges saying that they were a pretext for racially discriminatory jury selection in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, (1986). Batson, based upon the equal protection clause of the United States Constitution, forbids the exercise of peremptory challenges in a manner which masks purposeful discrimination.
¶ 7. The trial courts of this State have the obligation to ensure that peremptory challenges are not used to mask purposeful discrimination. Lockett v. State *288 517 So.2d 1346 (Miss.19) Wheeler v. State, 536 So.2d 1347 (Miss.1988) Fleming v. State, 732 So.2d 172 (Miss.1999). In honoring this obligation, the trial courts of this State have been directed to articulate on the record the factual analysis of the race neutral reasons offered. Hatten v. State, 628 So.2d 294, 294 (Miss.1993) Johnson v. State, 754 So.2d 1178 (Miss.2000), Robinson v. State, 761 So.2d 209 (Miss.2000).
¶ 8. In response to the trial court's inquiry, the State gave as the explanation for its exercise of these peremptory challenges the following reasons:
(1) juror's street address indicated a high crime area and his information sheet was incomplete, (2) juror's information sheet was incomplete, which left open the possibility that his three children listed on the form were illegitimate, and would be indicative of the juror's irresponsibility, (3) juror struck because she lived in a high crime area, was unemployed, and unmarried with children, and (4) juror challenged because he lived in a high crime area and was unmarried with a child.
¶ 9. The trial court accepted these reasons and allowed the peremptory challenges. However in allowing the exercise of these four peremptory challenges, the trial court stated no reason for doing so.
¶ 10. The trial court failed to make an on the record factual determination as to the race neutral reasons offered by the State for the exercise of its peremptory challenges. The record suggests that the trial court failed in its obligation to ensure that facially neutral reasons were not a mask for discriminatory actions. Hatten, at 309. This failure is evidenced by the exchange between counsel for the Defendant, and the trial court which follows:
MR. WAIDE: Well, Your Honor, I don'tto say that a person has children and is unmarried is some relationship to what kind of juror they would be in a criminal case, I don't see how it does. I would have to take each information sheet to go through the ones to see whether there are white jurors in the same situation. I do not believe that's a racially neutral reason.
THE COURT: Counsel, that's not the test. As to the juror being challenged, the State must articulate some race neutral reason. That's all. It doesn't say it must be compared with every other challenge that they do or do not exercise. The State will be permitted to exercise that challenge. That juror will be stricken.
¶ 11. This exchange leaves no doubt that the trial court did not consider whether the reasons offered by the state were merely a pretext for discrimination. Discrimination is seldom expressed in direct terms. It is instead generally expressed insidiously. As noted previously, our trial courts have the obligation to ensure that peremptory jury challenges are not used to cloak unlawful discriminatory intent in violation of the equal protection clause. The fulfillment of this obligation requires that our trial judges engage in comparison to assure that persons similarly situated are similarly treated.
¶ 12. Because, the trial court failed to (1) provide an on the record factual determination of the reasons given by the State for the exercise of its peremptory challenges, and (2) to ensure that the reasons offered by the State for the exercise of its peremptory challenges were not a pretext for discrimination and therefore violative of the equal protection clause, we reverse and remand this case.
¶ 13. Because this case is being reversed and remanded for a new trial, this Court will not consider Bogan's other issues.
*289 ¶ 14. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REVERSED AND THIS CASE REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST MONROE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, PAYNE, and THOMAS, JJ., concur IRVING, J., concurs with separate written opinion joined by CHANDLER and MYERS, JJ., not participating.
IRVING, J., concurring:
¶ 15. I fully agree with the majority that, for the reasons offered in the majority opinion, this case should be reversed and remanded for a new trial. However, I write separately to emphasize my view that no juror should be excluded from jury service simply because of where he or she lives or that he or she is unmarried with children or unemployed. I realize that Batson only prohibits discrimination against jurors on the basis of race, but the Fourteenth Amendment guarantees to each juror the equal protection of the law, and it is the public policy of this State that no juror be excluded from jury service on account of sex or economic status.
¶ 16. In my judgment, the protection afforded by the equal protection clause of the Fourteenth Amendment is broad enough to guarantee a juror the right to serve on a jury no matter that person's economic status which, we all know, determines the kind of neighborhood he or she will be able to live in. I also believe the Fourteenth Amendment prohibits discrimination in jury service based on one's marital status, a status not covered by Batson. However, to refuse to allow a person to serve on a jury because she is single with children is just as abominable as disallowing a juror's service because of race. First, there are many divorced and widowed women with children. Does that say anything about their moral fitness to dispense justice? I think not. Even if the potential juror with children has never been married, she should not be discriminated against in jury service on that basis. It is certainly against the law to discriminate against her in employment. See Peacock v. Drew Municipal School District, 433 F.Supp. 1072 (N.D.Miss.1977).
¶ 17. No challenge was made here on the basis of the Fourteenth Amendment, and I know of no case construing the Fourteenth Amendment in the context of which I speak; therefore, I will return to this matter in the Batson context. In Appendix I in Lockett v. State, 517 So.2d 1346 (Miss.1987), the Mississippi Supreme Court listed a number of challenges which it found other courts had determined were racially neutral. A potential juror who lives in a high crime area is listed as one of those challenges. The court which had made such finding was the Virginia Court of Appeals. The case was Taitano v. Commonwealth of Virginia, 4 Va.App. 342, 358 S.E.2d 590 (1987). In Taitano, the reason advanced by the prosecutor was not only that the jurors lived in a high crime area generally, but also because the potential jurors lived near the defendant or near the scene of the crime. Also, the prosecutor considered the jurors' age, dress and demeanor. Id. at 593. Batson provides federal rights. Thus, what is an acceptable race neutral reason for striking a potential juror is determined ultimately by federal law.
¶ 18. I noted in my concurring opinion in Lard v. State, 749 So.2d 276 (Miss.Ct. App.1999) that:

U.S. v. Bishop, 959 F.2d 820, 826 (9th Cir.1992) (citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)) instructs that if the justification is tainted by impermissible *290 generalizations regarding racial groups and their environment, the trial judge's credibility determinations are not in question. The trial judge need not reach the issue of whether the prosecutor's explanation was honest or merely a sham, for even assuming it was sincere, the State's explanation is not sufficient to satisfy Batson because a discriminatory intent is inherent in the prosecutor's explanation. Id. at 827.
¶ 19. I concurred in Lard because I concluded that the appellant failed to make statistically the race nexus with the high crime area in which the jurors lived. Here, as in Lard, the appellant failed to make statistically the race nexus. However, the daily news reports of law enforcement arrest reports show unmistakably that most of the criminal activity reported in this state occurs in African American neighborhoods. Therefore, I believe when a prosecutor strikes a potential juror because that juror lives in a high crime area, the trial judge is warranted in taking judicial notice of the fact that that area is inhabited predominantly by African Americans. Rule 201 of Mississippi Rules of Evidence provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
¶ 20. Once it is determined that the prosecutor is using a criterion closely related to race, the teachings of Bishop are quite appropriate. Thus, I will repeat here much of the Bishop analysis that I made in Lard about the use of a criterion closely related to race. There I said:
The Bishop court stated: "Bishop's claim focuses on the use of a criterion closely tied to race and raises the following question: Under what circumstances does such a criterion cease being race-neutral and become a surrogate for impermissible racial biases?" Bishop, 959 F.2d at 823.
The court noted the Government's argument that the prosecutor did not challenge Ms. Burr because she was black, but (at least in part) because she lived in Compton, a poor and violent community whose residents are likely to be "anesthetized to such violence" and "more likely to think that the police probably used excessive force." Id. at 825. In finding the prosecutor's explanation pre-textual, the Bishop court found that "the proffered reasons (that people from Compton are likely to be hostile to the police because they have witnessed police activity and are inured to violence) are generic reasons, group-based presuppositions applicable in all criminal trials to residents of poor, predominantly black neighborhoods. They amounted to little more than the assumption that one who lives in an area heavily populated by poor black people could not fairly try a black defendant." Id. at 825.
"To strike black jurors who reside in such communities on the assumption they will sympathize with a black defendant rather than the police is akin to striking jurors who speak Spanish merely because the case involves Spanish-speaking witnesses.... [T]he prosecutor's justification in this case, unlike in Hernandez, referred to collective experiences and feelings that he just as easily could have ascribed to vast portions of the African American community. Implicitly equating low-income, black neighborhoods with violence, and the experience of violence with its acceptance; it referred to assumptions that African Americans face, and from which they suffer, on a daily basis. Ultimately, the *291 invocation of residence both reflected and conveyed deeply ingrained and pernicious stereotypes. Government acts based on such prejudice and stereotypical thinking are precisely the type of acts prohibited by the equal protection clause of the Constitution." Id. at 825.
Lard v. State, 749 So.2d 276 (Miss.Ct.App. 1999).
¶ 21. Aside from the federal rights guaranteed by Batson and the Fourteenth Amendment, I believe that Miss.Code Ann. § 13-5-2 (Supp.2000), which sets forth the public policy of this State regarding jury service, prohibits the exclusion of jurors because of sex or economic status as well as race. That section reads:
It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.

(emphasis added).
¶ 22. I believe the striking of a female juror from jury service because the juror is unmarried with children is exclusion of the juror on account of the juror's sex because most unmarried jurors with children are female. Likewise, I believe the striking of a juror because the juror is unemployed or lives in a crime infested neighborhood is exclusion of the juror on account of economic status.
¶ 23. For these reasons, I concur with the majority's reversal of this case but believe that a trial judge is precluded from allowing a juror to be stricken, not only in violation of Batson, which prohibits exclusion on MILLIN, C.J., SOUTHWICK, the basis of race, but on the account of sex and economic status as well. Therefore, I believe the trial judge should be directed on remand to not permit challenges based on sex and economic status.
PAYNE, J., joins this separate opinion.