KING, P.J.,
concurring.
¶ 21. I concur only in the result of this case, and write separately to express my concerns about the Batson issue.
¶ 22. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), prohibits the use of race as a basis for the exercise of peremptory jury challenges. This prohibition extends to the use of seemingly race-neutral reasons to mask an *323 intent to discriminate. Bogan v. State, 811 So.2d 286(¶ 6) (Miss.Ct.App.2001). The burden is placed upon the trial judge to ensure that so-called facially neutral challenges do not mask discrimination. Id. at (¶ 7); Hatten v. State, 628 So.2d 294, 309 (Miss.1993); Pearson v. State, 746 So.2d 867 (¶ 9) (Miss.Ct.App.1998).
¶ 23. The reasons given by the State for the exercise of its peremptory challenges are extremely shallow even when considered in the best possible light. They represent the type of over generalizations, which serve as a rationalization for discrimination. At worst these reasons are a pretext to mask a discriminatory purpose by the State.
¶ 24. The first challenge was exercised against Retonya Jackson. The trial court had earlier denied the State’s effort to strike her for cause. The discussion regarding this attempted strike for cause was as follows:
The Court: All right. Does the State have anybody for cause?
Mr. Hedgepeth: For cause, we would ask that Retonya Jackson, panel 1 number 3, she was sleeping during voir dire, or appeared to be.
The Court: You should have told me to wake her up then.
Mr. Hedgepeth: She was non-responsive. She didn’t fill out her juror information form. Didn’t fill out most of the slots. She just put “not applicable” on everything as to whether married or anything like that?
The Court: Did she snore?
Mr. Hedgepeth: Didn’t hear her snoring.
Mr. Ratcliff: She did respond to our questions.
The Court: For that reason, I would deny it. You said there was something wrong with her form. What’s wrong with her form?
Mr. Hedgepeth: The only thing she really answered was her name, address, telephone number, and whether or not she had ever been on a jury. She left all of the other information—
The Court: That’s not — you can correct those things. You are an officer of the Court, and the bailiffs are suppose to be paying attention. If they see somebody sleeping, apprise the Court of it and I’ll wake them up.
¶ 25. When the trial court declined to strike Retonya Jackson for cause, the State then exercised a peremptory challenge against her. As to its exercise of this challenge, the record reflects the following:
Mr. Hedgepeth: Okay. On Retonya Jackson, as I stated earlier, she’s young, unmarried, non-responsive. She didn’t fill out her questionnaire as we felt like she should. It doesn’t rise to the level of cause but it is certainly a race-neutral basis.
The Court: All right. The Court will accept that as a race-neutral reason.
¶ 26. While accepting these reasons as race-neutral, the trial court did not examine them to determine whether they appeared to be pretextual. There is no question in the record which the State identified that Jackson should have responded to and failed to do so. Nor is there a suggestion of a correlation between age and marital status and the ability to listen to the evidence and render a fair and impartial verdict.
¶ 27. Ms. Jackson’s juror information card is not a part of the record before this Court; therefore, we are unable to see which information is or is not contained on it. If there was additional information which the State required, it was free to *324 pose those questions to Ms. Jackson. Abundantly clear in the record before this Court is the fact that it did not do so.
¶ 28. Equally troubling are the reasons given for striking Constance McCann.
¶29. The first excuse offered by the State is that McCann was related to a witness. When the defense pointed out this was not correct, the State abandoned that reason. Indeed a review of the trial transcript, shows that McCann indicated merely that she knew a witness, not that she was related to him.
¶ 30. When the relationship excuse failed, the State gave as a general reason McCann was unstable. As evidence of that, the State said (1) she had been working at her present job no more than seven weeks, and (2) that she was young, unmarried and had several children.
¶ 31. The State made no effort to inquire as to whether McCann was in fact unstable. It did not inquire whether this was her first job or just a new job. If it were a new job, then certainly the reason for the change was relevant to the issue of stability. Was it a matter of advancement? Was it necessitated by childcare considerations, or some other family responsibility? Again, the record is abundantly clear that the State made no effort to determine whether McCann was a stable or unstable person.
¶ 32. The reasons offered by the State for the exercise of these challenges are the type of generalizations which readily lend themselves to abuse, and under these circumstances appear to be highly suspect.
¶ 33. The appellant did not make a part of this record the jury roster or jurors’ information cards, or any other evidence which, this Court upon review, could clearly see that like conditions, were accorded different treatment. Had the appellant done so, such information would have been very helpful to this Court in resolving the Batson issues, and might have mandated a different result.
¶ 34. Lacking that information, I can only say that the majority opinion is very troubling to me, and I therefore join in only the result.