# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00499-SCT

*JOE SOLOMON PRUITT*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING

DATE OF JUDGMENT:              03/07/2007
TRIAL JUDGE:                   HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED:     MONROE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF INDIGENT APPEALS
                               BY: BENJAMIN A. SUBER
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY:  LA DONNA C. HOLLAND
DISTRICT ATTORNEY:             JOHN R. YOUNG
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 07/24/2008
MOTION FOR REHEARING FILED:    04/23/2008
MANDATE ISSUED:

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The appellant's motion for rehearing is denied. The previous opinions are withdrawn and these opinions are substituted therefor.

¶2.     Joe Solomon Pruitt appeals from his conviction on a charge of armed robbery in the Circuit Court of Monroe County, Mississippi, alleging a ***Batson*** violation in the selection of the jury. ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  Finding the trial court correctly found no purposeful discrimination, we affirm.

## FACTS

¶3.    Loomis Fargo fired Alonzo Jones from employment as a delivery driver. Jones recruited his friend Joe Solomon Pruitt and James Person to rob the Renasant Bank in Smithville, Mississippi, one of the banks on his former route. Jones knew the layout of the bank, the Loomis delivery schedule, and that two women staffed the bank during the day. Approximately a week after Jones was fired, Pruitt, Jones, and Person drove from Memphis, Tennessee, to the Renasant Bank in Smithville on the Loomis delivery day. Pruitt and Person, masked and gloved, entered the bank and forced the two employees to place the bank's cash into a backpack and a sack. Pruitt was armed with a handgun. Pruitt and Person left the bank and entered the car, where Jones waited. As they were leaving, a dye pack in Person's sack exploded, filling the car with smoke. He tossed the bag out the car window, and they fled back toward Memphis.

¶4.    At a four-way stop near Fulton, Mississippi, a sheriff's deputy saw the bank robbers and followed them as they entered Highway 78. Next, a state trooper spotted them on the highway and crossed the median to tail them, along with the deputy. Jones exited the highway at the next exit. He discovered the exit had no outlet, and he stopped the car beside a wooded area. The three men left the car and fled into the woods. After wandering around, they came across a shed next to a white house, where they hid and slept. The following day, they tried to leave in a second car, which became stuck in a ditch. They returned to the white house and asked the resident for assistance. The resident's son was attempting to free the vehicle when law enforcement officers arrived at the house and surrounded it. The bank

2

robbers surrendered. Some of the stolen cash was found hidden inside a couch in the house where the robbers were apprehended.

## DISCUSSION

¶5.     Pruitt argues one issue on appeal.[1]

> **WHETHER THE TRIAL COURT ERRED IN ACCEPTING THE RACE-NEUTRAL REASONS GIVEN BY THE STATE AFTER A *BATSON* OBJECTION REGARDING THREE JURORS.**

¶6.     Pruitt's only issue raised on appeal is a challenge to the sufficiency of the State's race-neutral reasons for peremptorily striking three African-American members of the venire. After the circuit court struck some members of the venire for cause and held a brief discussion about the number of peremptory strikes available to each side, the court stated the following: "If you will, I will be in chambers. As soon as you get a jury selected, I want to – I want to seat the jury promptly at twelve o'clock, noon." The court then recessed.

¶7.     After the recess, the court came back on the record with the question, "All right. Do we have a jury yet?" Pruitt immediately raised a *Batson* challenge, stating that the State had struck three African-Americans on the first panel of the venire: jurors 1, 2 and 14. *Batson*, 476 U.S. at 96-98. The State responded by stating that it tendered the panel with four African-Americans among the twelve jurors and volunteered its reasons for the peremptory strikes. The circuit court ruled:

---

[1]After briefing concluded, Pruitt filed a brief on his own behalf. We will not address the issues raised in Pruitt's brief because they are procedurally barred. M.R.A.P. 28(a)(3); *Sumrell v. State*, 972 So. 2d 572, 574-75 (Miss. 2008).

3

[T]hat the . . . there is not a – or was not a pattern of discrimination by the State in Striking Jurors 1, 2, and 14. . . . There is no pattern of discrimination established to even require the State to give race-neutral reasons. However, they have given what the Court considers race-neutral reasons for these strikes. The Court does not see these reasons as pre-textual, not race-based. . . . So the defendant's motion is overruled.

The jury consisted of five white males, two white females, one African-American male, three African-American females, and one female juror whose race was not identified for the record. Two white males served as alternates.

¶8.     This Court reviews a trial court's ruling on a *Batson* challenge with great deference and will not overturn the trial court's ruling unless it is clearly erroneous or against the overwhelming weight of the evidence. *Flowers v. State*, 947 So. 2d 910, 917 (Miss. 2007). *See also Batson*, 476 U.S. at 98 n.21; *Chisolm v. State*, 529 So. 2d 630, 633 (Miss. 1988); *Lockett v. State*, 517 So. 2d 1346, 1352 (Miss. 1987). When addressing a *Batson* challenge, a trial court employs a three-step procedure: (1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; (2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *Johnson v. California*, 545 U.S. 162, 168, 125 S. Ct. 2410, 2416, 162 L. Ed. 2d 129, 138 (2005). The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination. *Hicks v. State*,

4

973 So. 2d 211, 219 (Miss. 2007) (citing *Berry v. State*, 802 So. 2d 1033,1042 (Miss. 2001)).

¶9. Pruitt argues the State's reasons for striking the three jurors were pretexts for racial discrimination. The State responds by arguing the reasons are immaterial because the trial court ruled Pruitt failed to make a prima facie showing of purposeful discrimination. In the alternative, the State argues the reasons offered by the prosecutors are race-neutral and demonstrate no pretext for racial discrimination. We will examine each of the State's arguments.

¶10. This Court must first determine whether the issue of Pruitt establishing a prima facie case was dispositive. In *Hernandez v. New York*, a plurality opinion, the United States Supreme Court considered "the proper application of *Batson*." *Hernandez*, 500 U.S. 352, 355, 111 S.Ct. 1859, 114 L. Ed.2d 395 (1991). The defendant made a *Batson* objection; the State volunteered its race-neutral reasons before the trial court ruled on whether the defendant had established a prima facie case; and the trial court rejected the defendant's challenge. *Id.* at 356-58. The Supreme Court explained that with regard to the *Batson* three-step procedure, "where the [State] has done everything that would be required of him if the [defendant] had properly made out a prima facie case, whether the [defendant] really did so is no longer relevant." *Id.* (citing *U. S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983)). The Supreme Court specified that:

> [o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional

5

discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.

*Hernandez*, 500 U.S. 352 at 359.

¶11. The State argues that *Hernandez* is inapplicable to the case at hand because in *Hernandez*, the trial court never ruled on whether the defendant had established a prima facie case. In the case at hand, the trial court did rule that Pruitt had not established a prima facie case. While this distinction is accurate, it does not render *Hernandez* inapplicable. Under the same facts as the case at hand, this Court has either effectively or explicitly followed the *Hernandez* procedure.

¶12. In *Foster v. State*, this Court effectively followed *Hernandez*. *Foster*, 639 So. 2d 1263, 1279-1280 (Miss. 1994). In *Foster*, the trial court ruled that the defendant had failed to establish a prima facie case, required the State to give race-neutral reasons and found that there was no intentional discrimination. *Id.* at 1279-80. *Foster* noted that the trial court had ruled that the defendant had failed to establish a prima facie showing of discrimination. *Id.* at 1279. However, this Court declined to review the trial court's ruling on the defendant's prima facie case. *Id.* Instead, this Court proceeded to address the State's race-neutral reasons and the trial court's ruling on the ultimate question of intentional discrimination.[2] *Id.* at 1279-80. *Foster* did not cite *Hernandez*, but in accord with *Hernandez*, it declined to address the trial court's determination of whether the defendant had established a prima

---

[2]*Foster* found that the trial court had implicitly ruled that the reasons given by the State were sufficiently race-neutral. *Foster*, 639 So. 2d at 1280.

6

facie case, focusing on the propriety of the trial court's ruling with regard to the ultimate question. ***Id.*** at 1279-80.

¶13.   In ***Manning v. State***, this Court explicitly followed ***Hernandez***.  ***Manning v. State***, 726 So. 2d 1152 (Miss. 1998), *overruled on other grounds by **Weatherspoon v. State***, 732 So. 2d 158, 162 (Miss. 1999).  In ***Manning***, the trial court ruled that the defendant had failed to establish a prima facie case, required the State to give race-neutral reasons, and found that there was no intentional discrimination. ***Id.*** at 1182.  On appeal, this Court held that whether the defendant had established a prima facie case was moot under ***Hernandez***, since the State had offered race-neutral reasons and the trial court had ruled on the ultimate question of intentional discrimination.  ***Id.*** at 1182-83.  Like ***Foster***, ***Manning*** declined to address the issue of whether a prima facie case has been established.  ***Id.*** at 1183-84.

¶14.   In the case at bar, the State offered a race-neutral explanation for its peremptory challenges, and the trial court ruled on the ultimate question of intentional discrimination. Therefore, in accordance with our precedent, which follows the ***Hernandez*** procedure, we decline to address whether the defendant established a prima facie case and proceed to address the propriety of the trial court's ruling on the ultimate question.

¶15.   Pruitt raised a ***Batson*** challenge, questioning three strikes exercised by the State. The State offered reasons for each strike. The State explained that it struck juror number one because her jury form indicated that she had short-term employment, lived in a high-crime area, was a single mother, and according to one of the law enforcement officers, had a relative who had been prosecuted in that county. The State struck juror number two based

7

on information from one of the law enforcement officers that this juror had a relative who had been recently prosecuted. The State struck juror number fourteen because she had short-term employment and one of the law enforcement officers informed the prosecutor that the State had prosecuted two of the juror's relatives. The State also noted that it tendered four African-American jurors.

¶16. Pruitt argued that the State's reasons included several of the five indicia of pretext this Court listed in *Lynch v. State*. 877 So. 2d 1254, 1272 (Miss. 2004). The indicia of pretext for use in analyzing race-neutral reasons under *Batson* are:

> (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; . . . (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.

*Id.* Pruitt argued that no juror was questioned at voir dire about the characteristic for which she was struck. Pruitt also argued that there is a lack of record support for whether the State examined the officers' allegations that these jurors were related to individuals formerly prosecuted in that county. Finally, Pruitt argued that living in a high-crime area was a group-based trait.

¶17. As the State asserts, each of its reasons previously has been held by this Court to be race-neutral. Reasons this Court has accepted as race-neutral include being single with children, having short-term employment, and having a friend or family member charged with a crime. *Magee v. State*, 720 So. 2d 186, 188-89 (Miss. 1998). The Court also has held that "living in a 'high crime' area" is an acceptable, race-neutral reason. *Lynch v. State*, 877 So.

8

2d 1254, 1271-72 (Miss. 2004). This Court has cautioned, however, that previous opinions holding reasons to be race-neutral should not be construed to hold those reasons to be automatically race-neutral in any other case. *Lockett v. State*, 517 So. 2d 1346, 1353 (Miss. 1987). Thus, this Court will examine each reason which Pruitt argued was pretext.

¶18. Concerning the issue of whether a juror living in a high-crime area is pretext, precedent holding this as a race-neutral reason previously has been sufficient to affirm the trial court's decision. *Baldwin v. State*, 732 So. 2d 236, 243-44 (Miss. 1999). Further indicating there was no intentional discrimination involved in striking this juror, the additional reasons cited—short-term employment and single motherhood, which were unchallenged by Pruitt—also have previously been held to be race-neutral. *Magee*, 720 So. 2d at 188-89.

¶19. With regard to Pruitt's argument that the record lacked support that the jurors were related to persons prosecuted by the county, this Court has held that "[a]lthough lack of record support is one indication of pretext . . . the basis for the prosecutor's strike need not be in the record." *Manning v. State*, 765 So. 2d 516, 519 (Miss. 2000) (citing *Thorson v. State*, 721 So. 2d 590, 597-98 (Miss. 1998) (prosecutor acting in good faith may offer a race-neutral reason supplied to him by a third party)). This Court has stated:

> [w]e decline to set any limits on the prosecutor's use of any legitimate informational source heretofore or hereafter available as to jurors. Furthermore, the prosecutor does not have to question a juror in open court about such information before using it as a racially neutral ground to make a peremptory strike, as long as the source of the information and the practice itself are not racially discriminatory.

***Snow v. State***, 800 So. 2d 472, 482 (Miss. 2001) (quoting ***Brown v. State***, 749 So. 2d 82, 87

(Miss. 1999) (citing ***Lockett***, 517 So. 2d at 1352)). *See also **Flowers v. State***, 947 So. 2d

910, 925 (Miss. 2007). Accordingly, Pruitt's arguments concerning lack of record and failure

to voir dire are insufficient to overcome the deference we give to the trial court with regard

to its ruling on a ***Batson*** challenge.[3]

¶20.     Relying on ***Hatten v. State***, 628 So. 2d 294 (Miss. 1993), the dissent argues that the

trial court erred because it did not make specific findings in connection with its ruling on the

State's reasons. ***Batson***, the case which originally defined the three-step analysis required

in a jury-discrimination challenge, did not articulate a particular means of accomplishing the

---

[3] The dissent cites ***Snyder v. Louisiana***, 128 S. Ct. 1203, 1209, 170 L. Ed. 2d 175 (2008), as clearly supporting the proposition that an appellate court should not defer to a trial court which did not make specific findings of fact on the record for each race-neutral reason proffered. This is a generalization and overstatement simply not found in ***Snyder***. In ***Snyder***, "the Supreme Court rejected the State's argument that the prosecutor's peremptory challenge was validly based on a prospective juror's nervousness for the reason that the record did not reflect whether the trial court, in allowing the challenge, had noted, recalled or made a determination as to the juror's demeanor." ***Haynes v. Quarterman***, 526 F.3d 189, 199 (5th Cir. 2008). The Supreme Court did not defer to the trial court because of the nature of the reason. "[D]eterminations of credibility and demeanor lie 'peculiarly within a trial judge's province.'" ***Snyder***, 128 S. Ct. at 1208 (citing ***Hernandez***, 500 U.S. at 365). Without a trial court determination on the record, the Supreme Court could not presume that the trial judge credited the prosecutor's assertion that the juror had exhibited the demeanor suggested. ***Snyder***, 128 S. Ct. at 1209.

The dissent quotes the Supreme Court's note that "deference is *especially appropriate* where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." ***Id.*** (emphasis added). From this narrow statement, there is no inference that the Supreme Court was prohibiting or even discouraging deference in *all* cases in which the trial court fails to make specific findings for each proffered reason. In fact, the Supreme Court reiterates its position that "in the absence of exceptional circumstances, we would defer to [the trial court]." ***Id.*** at 1208 (citing ***Hernandez***, 500 U.S. at 365). The dissent misstates the Supreme Court's analysis in ***Snyder.***

third step. *Batson*, 476 U.S. at 98 ("The trial court then will have the duty to determine if the defendant has established purposeful discrimination."). The Supreme Court has not since required trial courts to employ any specific process in carrying out steps two and three of the *Batson* procedure. On the contrary, in addressing a *Batson* claim, the Supreme Court has stated, "[w]e adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it." *Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). A number of courts have used this statement to reject the argument that a trial court must make specific findings of fact regarding the proffered race-neutral reasons. *See e.g., State v. Frazier*, 115 Ohio St. 3d 139, 152 (2007) (while more thorough findings would have been helpful, "the trial court is not compelled to make detailed factual findings to comply with *Batson*"); *Lamon v. Boatwright*, 467 F. 3d 1097, 1101 (7th Cir. 2006) (where a trial court failed to make findings on each proffered reason, it is sufficient if the appellate court can infer from the record that the trial judge engaged in the step-three inquiry); *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006) ("As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge.")

¶21.    Moreover, in *Burnett v. Fulton*, this Court held that "[t]he trial judge was not required to state on-the-record 'specific explanations' for accepting race-neutral reasons for striking a juror." *Burnett*, 854 So. 2d 1010, 1016 (Miss. 2003). In *Burnett*, "[a]lthough the [trial] judge allowed the reasons to stand, he did not make 'specific explanation' on the record."

11

*Burnett*, 854 So. 2d at 1013. This Court cited *Hatten* for the proposition that "trial court judges *should* make on-the-record factual determinations of race-neutral reasons in cases involving *Batson* challenges." *Burnett*, 854 So. 2d at 1014 (citing *Hatten*, 628 So. 2d at 298) (emphasis added). However, this Court explained that "[t]he trial judge need only have submitted to the court [sic] a basis in fact so as to permit a reasonable judgment to be made that the reason is not contrived." *Burnett*, 854 So. 2d at 1016 (citing *Hatten*, 628 So. 2d at 299). This Court declared:

> [w]here a trial judge fails to elucidate such a specific explanation for each race-neutral reason given, we will not remand the case for that *Batson*-related purpose alone. This Court is fully capable of balancing the *Batson* factors in cases such as this one. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice.

*Burnett*, 854 So. 2d at 1016. Accordingly, in the case at bar we find the trial court's ruling sufficient for review.

¶22.    As this Court has recognized the reasons given for striking each of these venire members as a race-neutral explanation, we find no clear error in the trial court's ruling. *See Baldwin*, 732 So. 2d at 243-44. Considering that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike," *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995), we have examined the evidence put forth by Pruitt at trial and find that Pruitt failed to meet his burden.[4] The trial court's denial of Pruitt's *Batson* challenge is affirmed.

_____

[4]The dissent justifies reversal partially by comparing the length of employment of juror number fourteen who was stricken with that of white venire persons. This comparison

12

¶23. As an addendum to this opinion, we must take exception to the trial court's actions in directing the lawyers to select the jury outside its presence. The fact that the peremptory strikes portion of the jury selection was not held on the record posed significant problems in consideration of this appeal. According to the rules for circuit court, "Constitutional challenges to the use of peremptory challenges shall be made at the time each panel is tendered." URCCC 4.05B. The application of this rule requires, at the time the peremptory strikes are made, the presence of the judge to rule on any challenge, and the court reporter to record the arguments and rulings.

<b><u>CONCLUSION</u></b>

¶24. Pruitt failed to show under *Batson* that the State intentionally discriminated in exercising its peremptory strikes. Therefore, we affirm his conviction.

¶25. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE (35) YEARS, WITH FIVE (5) YEARS SUSPENDED, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE APPELLANT SHALL BE PLACED UNDER POST-RELEASE SUPERVISION UPON RELEASE FROM THE TERM OF INCARCERATION FOR A PERIOD OF FIVE (5) YEARS.**

**SMITH, C.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

---

was not presented by Pruitt during trial. This Court has specifically declined to consider arguments of pretext upon which the trial court has had no opportunity to rule. *Flowers v. State*, 947 So. 2d 910, 921-22 (Miss. 2007) (citing *Evans v. State*, 725 So. 2d 613, 632 (Miss. 1997)). To do otherwise would be in violation of our long-standing rule that issues not presented to trial court are procedurally barred, and any error is waived. *Flowers*, 947 So. 2d at 922.

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶26. Because the trial court erred in overruling Pruitt's ***Batson*** challenge with respect to two African-American prospective jurors and committed reversible error by not making an on-the-record factual determination of whether the State's proffered reasons were non-pretextual, I dissent.

¶27. The State's race-neutral reasons for striking Juror Number 14, Mary Louise McMillan, were that she had a history of short-term employment and that she was related to individuals who had been prosecuted. Regarding the State's first reason for striking McMillan, two indicia of pretext are present in the record. First, the State accepted two white jurors who indicated on their juror cards that they had been employed by their present employer for six weeks and one year, respectively, but struck McMillan, who indicated on her juror card that she had been employed by her present employer for six months. ***Mack v. State***, 650 So. 2d 1289, 1298 (Miss. 1994) (stating that "presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge" is an indicium of pretext). Second, the State did not ask McMillan any questions about her employment history. ***Id.*** (stating that "failure to voir dire as to the characteristic cited" is an indicium of pretext). Because there were unchallenged jurors of the opposite race who had also been employed for a short period of time, and the State failed to conduct voir dire as to this reason, I find that this reason was pretextual.

¶28. As for the State's second reason for striking McMillan, there are also two indicia of pretext. First, the State did not question McMillan about her alleged relationship with

14

individuals who had allegedly been prosecuted. Second, the record reflects that the State obtained this information about McMillan from a law enforcement officer; the assistant district attorney stated that he had "concerns via Officer Shumpert, that [McMillan] [wa]s related to persons that have been prosecuted."

¶29. The State also struck Juror Number 2, Tracy Lagrone, because the prosecutor had been told by a law enforcement officer that she was possibly related to an individual who had been prosecuted by the same district attorney's office. The State's explanation of the reason for striking Lagrone was as follows:

> Tracy Lagrone, once again, one of the law enforcement officers expressed concern that she is related to one of our supervisors here whose son we have prosecuted in the very recent past. . . . In any event, the reason that we made that strike was because of concern that she was related to the supervisor whose son we had prosecuted.

Despite having "concerns" about McMillan and Lagrone being related to individuals who had been prosecuted, the State never directly asked McMillan or Lagrone during voir dire whether they were related to such individuals.[5] Accordingly, the State failed to conduct voir dire as to McMillan's and Lagrone's alleged relationships to these unidentified individuals who had allegedly been prosecuted. *See Mack*, 650 So. 2d at 1298 ("The failure to *voir dire* usually comes into play when the prosecutor expresses some suspicion or uncertainty about the true situation involving the juror, such as when he 'believes' that the juror is related to

---

[5] During voir dire the State did ask whether any of the venirepersons had a relative or close friend who had "ever been arrested or charged with a felony," but the record does not reflect whether McMillan or Lagrone raised their hands.

15

a criminal."). "'[T]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.'" *Miller-El v. Dretke*, 545 U.S. 231, 246, 125 S. Ct. 2317, 2328, 162 L. Ed. 2d 196 (2005) (quoting *Ex parte Travis*, 776 So. 2d 874, 881 (Ala. 2000)). Moreover, there is no support in the record for this supposedly race-neutral reason. Accordingly, the State's "failure to conduct voir dire [and the lack of record support] must weigh against the state in an evaluation of" whether this reason for using a peremptory strike against McMillan and Lagrone was a pretext for racial discrimination. *Mack*, 650 So. 2d at 1298.

¶30.    Of course, these two indicia of pretext must be "viewed . . . in light of the relative strength of the prima facie case of discrimination." *Id.* Even though Pruitt's prima facie case is not strong, I conclude that the trial court clearly erred in overruling Pruitt's *Batson* challenges to the strikes of McMillan and Lagrone. The State did not examine McMillan or Lagrone about their alleged relationships to individuals who had allegedly been prosecuted, give them an opportunity to respond to these allegations, or produce any evidence of such relationships. Moreover, the State did not provide this information to Pruitt's attorney prior to or during voir dire, which prevented his attorney from evaluating the veracity of these allegations. The cumulative effect of all of this necessitates a finding that the trial court's ruling that this explanation for the strikes of McMillan and Lagrone was not a pretext for racial discrimination was *Batson* error. *See Howell v. State*, 860 So. 2d 704, 766-68 (Miss.

16

2003) (Graves, J., dissenting).[6]  Accordingly, the trial court committed clear error in overruling Pruitt's ***Batson*** challenge with respect to McMillan and Lagrone.

¶31.    The trial court also committed reversible error, in my judgment, by not making any factual findings regarding the race-neutral reasons proffered by the State for striking McMillan and Lagrone.  This Court has held that when considering a ***Batson*** challenge, a trial court must "make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors." ***Hatten v. State***, 628 So. 2d 294, 298 (Miss. 1993).  The trial court must also "give . . . [a] 'clear and reasonably specific' explanation for [its] ruling." ***Id.*** at 299.  "Mere broad conclusions at the end of the ***Batson*** process will not suffice." ***Gary v. State***, 760 So. 2d 743, 748 (Miss. 2000).  Moreover, the United States Supreme Court has recently stated that when reviewing a trial court's ruling on a ***Batson*** challenge, an appellate court should not defer to the trial court if

_____

[6]Justice Graves stated in ***Howell***:

> Allowing the State to present uncorroborated facts and information to the court in support of its peremptory challenge of black jurors **after** the voir dire process has been completed denies [the defendant] the basic fairness guaranteed under the Constitution and rewards the State for failure to ask any relevant questions of [the stricken venirepersons].

***Id.*** at 767-68 (emphasis in original).  I also agree with Justice Graves that there should be a "require[ment] [that] the party attempting to exercise the peremptory strike . . . question the person who is the object of that strike, before it may challenge them." ***Id.*** at 768.

17

it did not make "specific finding[s] on the record" regarding each of the prosecutor's explanations for its strikes. *See Snyder v. Louisiana*, 128 S. Ct. 1203, 1209, 170 L. Ed. 2d 175, 182 (2008) ("[D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not show that the trial judge actually made a determination concerning Mr. Brooks' demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge without explanation."); *cf. id.* at 1213 (Thomas, J., dissenting).

¶32. The majority essentially argues that the trial court was not required to make any findings of fact regarding the State's race-neutral reasons for its strikes against African-American venirepersons. The only case it can cite in support of its argument is *Burnett v. Fulton*, 854 So. 2d 1010 (Miss. 2003). *Burnett* involved a complete mischaracterization of *Hatten* and thus was wrongly decided. The *Burnett* Court interpreted the *Hatten* Court's holding to be merely admonitory when it clearly was not: "[W]e today decide it *necessary* that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. This *requirement* is to be prospective in nature." *Hatten*, 628 So. 2d at 298 (emphasis added). The *Burnett* Court failed to recognize how essential it is that trial courts make on-the-record factual determinations when ruling on *Batson* challenges. If a trial court does not make findings of fact, it is extremely difficult for us to determine why the court ruled the way it did, and therefore whether that ruling should be upheld. *See id.* ("Obviously, where a trial court offers

18

clear factual findings relative to its decision to accept the State's reasons for peremptory strikes, the guesswork surrounding the trial court's ruling is eliminated upon appeal of a *Batson* issue to this Court."); *Burnett*, 854 So. 2d at 1017 (McRae, P.J., dissenting) ("How are we to review the trial judge's findings of fact regarding the proposed race-neutral reasons when no specific findings are made?"). Accordingly, *Burnett* should be overruled, and we should continue to adhere to our holding in *Hatten*.

¶33. A trial court certainly does not "need [to] make detailed findings addressing all the evidence before it." *Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). But, contrary to the assertions of the majority, a trial court does need to make some factual findings regarding the race-neutral reasons given for each strike. In this case, the trial court simply did not make any findings of fact. It gave the following explanation for its ruling:

> [T]hey have given what the Court considers race-neutral reasons for these strikes. The Court does not see these reasons as pre-textual, not race-based. Therefore, jurors, as I understand it, of the African-American race that were tendered by the State; Jurors 4, Ethel Lee Haynes; Juror 9, Barbara Michelle McDonald; Juror 12, Tommy L. Griffin, and Juror 15, Shirley Ann Braylock. So the defendant's motion is overruled.

Clearly, the trial court did not give a "clear and reasonably specific" explanation of its ruling with respect to the strikes of McMillan and Lagrone; indeed, the court's ruling is based on nothing more than its *ipse dixit*. Unlike the trial court in *Hatten*, it "merely accept[ed] the specific reasons given by the prosecution at face value, . . . [instead of] consider[ing] whether they were contrived." *Hatten*, 628 So. 2d at 299. Because of the trial court's failure to make

19

an on-the-record factual determination of whether the State's reasons were non-pretextual, we should, at the very least, remand this case for a hearing and findings in accordance with *Hatten*. *See, e.g., Johnson v. State*, 754 So. 2d 1178, 1180 (Miss. 2000) (remanding for a hearing in accordance with *Hatten*). However, I would hold that the trial court's failure in this case to make an on-the-record factual determination constitutes reversible error.

¶34.     "*Hatten* does not require literal truth in the reason proffered. It only requires that there be some basis in fact sufficient to allow the court to make a reasonable judgment that it is not contrived." *Snow v. State*, 800 So. 2d 472, 480-81 (Miss. 2001). Because the court did not determine whether the State's allegations that McMillan and Lagrone were related to individuals who had been prosecuted had some basis in fact, there is no way to determine if its judgment that these allegations were not contrived was reasonable. When a prospective juror is struck based on information received from outside sources, the trial court has a duty to probe the reliability of this information:

> While we do not hold today that our trial judges should conduct a 'mini-hearing' within a *Batson* hearing each time a peremptory challenge is exercised based on information gained from outside sources, we do depend on the trial courts to exercise caution to ensure that peremptory challenges based on information from outside sources is credible and supported by on-the-record factual findings to this effect and that a complete record is made on this issue. If in doubt about the validity of outside information, the trial court should do what is necessary to ensure the proposed reasons are non-pretextual. This may include questioning the outside source on the record.

*Brawner v. State*, 872 So. 2d 1, 12 (Miss. 2004). The trial court in this case did not make any effort to determine whether the information the assistant district attorney received from the law enforcement officers about McMillan or Lagrone was true. The trial court's failure to

20

make any factual findings regarding this outside information, in my judgment, requires reversal. *See* **Bounds v. State**, 688 So. 2d 1362, 1367 (Miss. 1997), *overruled on other grounds by* **Brown v. State**, 890 So. 2d 901, 913 (Miss. 2004) (reversing and remanding for a new trial because of failure to comply with **Hatten**); **Bogan v. State**, 811 So. 2d 286, 288 (Miss. Ct. App. 2001) (same).

¶35.    For the foregoing reasons, I would reverse the judgment of the trial court and remand this case for a new trial.

   **GRAVES, J., JOINS THIS OPINION.**