CORRECTED ORDER

This matter is before the Court en banc on the Motion to Stay Execution and Set Aside Convictions, Second Motion for Leave to File Successive Petition for Post-Conviction Relief, and Motion in the Alternative for Other Forms of Relief filed by Willie Jerome Manning. Also before the Court is the Response filed by the State of Mississippi, the Reply filed by Manning, the Supplement to the Motion filed by Manning, and the Supplement to the Response filed by the State of Mississippi.
After due consideration, the Court finds that the Motion to Stay Execution should be granted until further Order of this Court.
IT IS THEREFORE ORDERED that the Motion to Stay Execution filed by Willie Jerome Manning is hereby granted pending further Order of this Court.
SO ORDERED, this the 7th day of May, 2013.
TO GRANT: WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ.
RANDOLPH, PRESIDING JUSTICE, OBJECTS TO THE ORDER WITH SEPARATE WRITTEN STATEMENT.
RANDOLPH, P.J.,
objecting to the order with separate written statement:
¶ 1. Before the Court en banc is the “Motion to Stay Execution and Set Aside Convictions, Second Motion for Leave to File Successive Petition for Post-Conviction Relief, and Motion in the Alternative for Other Forms of Relief’ filed by Willie Jerome Manning. Also before the Court is Manning’s Supplement to his motion, the Response filed by the State of Mississippi, the State’s Supplement to its Response, and Manning’s Reply to the State’s Response.
¶ 2.1 would deny relief, for Manning has wholly and completely failed to comply with statutory requirements and the precedent of this Court. “Mississippi Code Section 99-39-9(e) (Rev.2007) requires that an application for post-conviction collateral relief be supported by the affidavits of witnesses who will prove the petitioner’s claims.” Brown v. State, 88 So.3d 726, 733 (Miss.2012).
¶ 3. Letters submitted by petitioner from the Department of Justice have unsigned reports attached from a Microscopic Hair Comparison Analysis Review Team Laboratory Division (FBI), without identifying the authority, credentials, qualifications, name, or title of any member of the team. The letters challenge not only former FBI experts in hair, but also ballistics. Our established law and justice require more.
¶ 4. The petitioner has had access to the hair and other forensic evidence since April 26, 1994. (R. 335). The petitioner even was granted his own ballistics expert, Richard D. Carter, at taxpayer expense on August 24,1994. (R. 368). However, petitioner elected not to call Carter at trial.
¶ 5. Hair and ballistics issues from petitioner’s violent crimes committed twenty years ago have been included in a long string of litigation in State and Federal Courts. This is not the first time petitioner has raised these issues. Our predecessors on this very Court rejected the hair issue on direct appeal, stating that Blythe “did not claim that the hair matched that of the defendant.” Blythe only testified that the hair came from a member of the black race. He also admitted that his expertise could not produce absolute certainty. Manning v. State, 726 So.2d 1152, 1180-81 (Miss.1998).
¶ 6. After relief was denied on direct appeal, petitioner filed for post-conviction relief in this Court in 2001.[1] At that time, petitioner neither sought DNA testing nor raised hair or ballistics issues as a basis for relief.[2]
¶ 7. In his federal habeas action, the same issues were raised and rejected. Former United States District Court Judge Allen Pepper (now deceased) wrote that “[a]t trial expert testimony was given only that the hair found in Miller’s car exhibited characteristics associated with the African-Americans.” Manning v. Epps, 2008 WL 4516386 (N.D.Miss.2008). Judge Pepper continued, “[e]ven if DNA testing could conclusively prove that it was not Petitioner’s hair that was found in the vehicle, those results would not impeach the testimony given at trial, much less exonerated Petitioner.” This issue has been fully litigated.
¶ 8. Only after exhaustion of all appeals, federal and state, has this series of eleventh-hour applications been made. “[A] defendant should not be allowed to take a gambler’s risk and complain only if the *1084 cards [fall] the wrong way.” District Attorney’s Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 86, 129 S.Ct. 2308, 2330, 174 L.Ed.2d 38 (2009) (Alito, J., concurring) (citation omitted).
¶ 9. One of the Department of Justice’s letters contains specific statements that are contrary to prior Department of Justice publications. The letter asserts that “[m]itochondrial DNA testing became routine after December 31, 1999.” A Department of Justice article published in July 1999 belies this assertion. The July article states unequivocally that testing began in 1992, and that evidentiary sampling began in 1996. As of April 1999, mtDNA analyses had been admitted in criminal proceedings in the following states: Alabama, Arkansas, Florida, Indiana, Illinois, Maryland, Michigan, New Mexico, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, and Washington.[3]
¶ 10. The letter also states that the Department of Justice is “assisting] [the Innocence Project and the National Association of Criminal Defense Lawyers] in their evaluations.” “The Innocence Project supports a moratorium on capital punishment.”[4] The “NACDL has been an outspoken critic of the death penalty system.” [5] Of critical concern is the language contained in the first FBI report stating that, “[g]iven the abbreviated time frame for review, the FBI requests the Innocence Project (IP) to advise as to whether or not they agree with the FBI’s conclusions as soon as possible.” Although the connectivity and expediency by which this review was accomplished is mind boggling, I should not be surprised, given that the families of victims of the clandestine ‘Fast and Furious’ gun running operation can’t get the Department of Justice to identify the decision makers (whose actions resulted in the death of a border agent and many others) after years of inquiry, and that this is the same Department of Justice that grants and enforces Miranda warnings to foreign enemy combatants.
¶ 11. There exists a host of other legal and factual issues. But time allocated to write is so compressed due to last minute filings, I shall more fully address these deficiencies when the opportunity presents itself.

. Post-conviction relief was denied in 2006.

. This Court was granting DNA requests as early as 2002-seven years before the post-conviction relief statute was amended.

.Alice R. Isenberg and Jodi M. Moore, Mitochondrial DNA Analysis at the FBI Laboratoty, 1 Forensic Science Communications (July 1999), http://www.fbi.gov/about-us/lab/ forensic-science-communications/fsc/julyl999/ dnalist.htm (last visited May 7, 2013).

. http://www.innocenceproject.or¡^Content/ The_Death_Penalty.php (Last visited May 7, 2013).

. http://www.nacdl.org/criminal-defense/ death-penalty/. (Last visited May 7, 2013).